## JACOBS vs. McDONALD.

1. Where the assignee of a note not negotiable sues the maker before a justice of the peace, and the execution is returned by the constable unsatisfied for want of personal property, and a transcript of the judgment is filed in the office of the clerk of the Circuit Court, but no execution is issued thereon by the clerk, the assignee will not be considered as having used that "due diligence in the institution and prosecution of a suit" against the maker that will enable him to maintain an action against the assignee for the amount due. An execution should have issued from the clerk's office, otherwise it would not appear but that the money could have been made out of the real estate of the maker.— See act of February 4, 1835, concerning "Bonds and Notes," R. S. 1835, p. 105.

2. Where an instruction is given with reference to the provisions of a particular statute, it is better that the instruction contain the language of the statute, as where the statute uses the words "due diligence." (See act concerning "Bonds and Notes," R. S. 1835, p. 105.) It is improper to substitute for them the words "reasonable time."

3. It is not every species of neglect, or failure to perform his duty, on the part of an officer, which will deprive an assignee of a note not negotiable of his recourse against the assignor. The misconduct of the officer must be such as will clearly give a recourse against him for the debt. Therefore the defendant, the assignor of the note sued on, offered to prove that the maker had an interest in certain personal property sufficient to pay the debt, but that the constable failed to levy upon and sell the property. It was held that such facts alone did not affect the rights of the assignee, and therefore the evidence was properly excluded.

4. Where a note is assigned, the assignee takes the place of the assignor, and he is required to use that diligence that a prudent man would use to collect the debt had it been his own. He is required to act as a prudent man would act who had no recourse against another in the event of his losing the debt.

## APPEAL from Ray Circuit Court.

Bowman and Dunn, for Appellant.

1. The return of the officer, of "No property found," in an execution in favor of the assignee, against the maker of the note, is, in an action against the assignor, only *prima facie* evidence in favor of the plaintiff.

2. The proof of the price which the property brought when it was sold raises no presumption of what it would have been sold for at a period of time long anterior.

3. The evidence offered by the defendant, and rejected by the court, that, while the constable had the execution in his hands, the maker of the note had property sufficient, in the same township, to make the debt, ought, in this action, by the assignee against the assignor, to have been received.

4. The facts, if established, would, by disproving both the insolvency of the maker of the note, and the due diligence required of the assignee, have constituted a complete bar to the action.

5. No injustice would have been done to the plaintiff, who ought to have sought his remedy against the constable.

*Jacobs* vs. *McDonald.*

6. The instruction given, on motion of the plaintiff, by substituting "*reasonable time*" for "*due diligence*, misconstrued the statute, and ought to have been refused.

7. The first instruction asked by the defendant, and refused by the court, being in the language of the statute, and predicated on the facts of the case, ought to have been given.

8. The second instruction asked by the defendant, and refused by the court, rightly assumes, that an unexplained delay of five months, by the constable, was not due diligence.


P. L. EDWARDS, *for Appellee.*

1. The court did not err, either in giving the instructions prayed by the plaintiff, or in refusing those prayed by the defendant.

1st. That asked by the plaintiff was law.

2d. The first and second prayed by defendant, are but abstract principles of law.

3d. The third is against law, and would have taken the case wholly from the jury.

2. The court rightly refused the evidence offered by the appellant.

1st. The property in question may have been concealed by a fraudulent collusion of the appellant, the witness, and the defendant in the execution. It may have been held out to the world as the property of the witness. The appellant did not offer to prove that the appellee had any knowledge or notice, either from himself or others, of the maker's interest in the property in question.

2d. The constable's return on the execution, of "No property, &c.," is conclusive that the defendant had none in the township.—Hogan *vs.* Vance, 2 Bibb, 34.

3. The courts of Kentucky have exacted, of assignees of notes not negotiable, extraordinary diligence. In Virginia, a very different construction has been given to a statute of the same character. The rules established by the former carry the doctrine of diligence to an extent unknown to the common law, and unauthorized by general principles. The true rule, the one sanctioned by the Supreme Court of the United States, is, that the assignee is bound to such diligence as a man of ordinary diligence and prudence would employ in a case in which he was solely and exclusively interested.—Bank of the United States *vs.* Tyler, 4 Peters' Rep., 366.

4. The record shows, that in this case the assignee used not only due diligence, but extraordinary diligence.

1st. Almost immediately after the assignment, he instituted suit, and obtained a judgment at the first rule-day.

2d. On the third day thereafter he takes out execution, which is returned, "No property, &c."

3d. He then takes a transcript to the Circuit Court.

4th. He then caused the execution to be renewed, and a supposed debtor of the

Jacobs vs. McDonald.

defendant therein to be garnisheed, and the execution is again returned, "No property," &c.

5. There is no irregularity disclosed by the record, of which the appellant can now take advantage.

6. Could the appellee be required to know that the maker of the note had property which the constable could not find? Can the appellant be allowed to prove that the property which was sold under the execution would have brought more if the sale had been made at an earlier day?—and would such matter be any defence?—See the doctrine of assignment of notes not negotiable, examined in Harmon vs. Armstrong, 5 Mo. Rep., 274; Pococke vs. Blount, 6 Ibid., 338; Bank United States vs. Weisiger, 2 Peters' Rep., 331; Same vs. Tyler, 4 Peters' Rep., 366, and authorities referred to.

Scott, J., delivered the opinion of the Court.

This was an action of assumpsit, commenced by McDonald, the assignee, against Jacobs, the assignor of a promissory note executed to him by Thomas A. Jacobs, in which McDonald recovered a judgment. The suit was instituted in a justice's court, and taken to the Circuit Court.

On the trial in the Circuit Court, the note assigned was given in evidence, on which there was the assignment to McDonald, dated the 29th January, 1842. A summons was issued against the maker, T. A. Jacobs, on the 17th of February, 1842, returnable to the 5th March following, on which day judgment by default was taken against Jacobs. An execution was issued on the 8th of March, and returned the 7th May, "No property found." A transcript was filed in the office of the clerk of the Circuit Court on the 2d July, and on the 23d July the execution was renewed for sixty days. By virtue of this execution, on the 6th day of August, Jacobs' interest in a stallion, being one-half, was sold, which brought the sum of twenty dollars, and the constable returned, that he could find no other property on which to levy the remainder of the debt. Henry Jacobs, the defendant, then offered to prove that Thomas A. Jacobs had an interest in the stallion, and resided in the township in which suit was brought, during the winter of 1842, and until some time in April following, and that the horse was in the same township; that the horse was worth a great deal more than he sold for, and would have paid the debt had he been offered for sale at an earlier day. This evidence was not admitted by the court, to which an exception was saved.

The court instructed the jury, at the instance of the plaintiff, McDonald, that if they find, from the evidence, that the note was assigned by the defendant to the plaintiff, and prosecuted with effect in a reasonable time, and that the returns on the execution show that the debt could not be made from T. A. Jacobs, then, in the absence of any other proof, they must find for the plaintiff.

In our opinion, the plaintiff had not shown a right to recover, inasmuch as no execution had issued from the clerk's office of the Circuit Court, on the transcript of the justice. A constable cannot sell lands under an execution. From aught that appears, Thomas Jacobs may have had land. Why was a transcript filed, if

there were no land on which the lien of a judgment could attach? No capia'
can now issue against the defendant in debt, consequently, there is no mode o
compelling a party to surrender lands in discharge of an execution issued from
a justice's court.   An execution from the Circuit Court can alone reach them,
and it should have been issued, otherwise it does not appear but that the money
could have been made out of the real estate of Thomas A. Jacobs.—Bank of
United States *vs.* Tyler, 4 Peters' Rep.

As the judgment will be reversed, we cannot refrain from an expression of the
opinion, that the instruction did not contain the language employed by the statute,
and we can see no reason for substituting the words, "*reasonable time*," for "*due
diligence*," the words used by the act.   And this appears the harsher, as instruc-
tions, couched in the language of the law, were asked by the defendant, and re-
fused.   If the steps taken in the cause had shown due diligence in the institution
and prosecution of a suit, we would not have reversed the judgment for this
reason.

As to the evidence which was excluded by the court, we are not prepared to
say the court committed error in so doing.   The object of the evidence was not
to show, as it seems, a want of diligence in the plaintiff, but neglect in the officer.
It is not every species of neglect, or failure to do his duty, which will deprive the
assignee of his recourse against his assignor.   It seems, the misconduct of the
officer must be such as will clearly give a recourse against him for the debt,
(3 Mon., Postlewait *vs.* Garrett,) otherwise the assignee will not be deprived of
his recourse against the assignor.   It would be very hard if a person, obliged to
bring a suit, should suffer by the neglect or misconduct of those employed by the
law to perform acts which can be done by them alone.

When a note is assigned, the assignee takes the place of the assignor, and he is
required to use that diligence that a prudent man would use to collect the debt
had it been his own; and he will not be permitted to let the knowledge of the
fact that he has a recourse against the assignor relax his exertion to obtain pay-
ment.   He is required to act precisely as a prudent man would act, who had no
recourse against another in the event of losing his debt.   What his conduct should
be, must be determined from the circumstances of each case.   It is the duty of
the assignee to institute a suit against the maker, as promptly as he may prose-
cute it with due diligence.   When the maker or obligor is in doubtful circum-
stances, but not insolvent, it is the duty of the assignee to proceed with the utmost
promptitude, and to prosecute his suit with diligence to judgment, and sue out
execution without any unreasonable delay.

The other judges concurring, the judgment below is reversed, and the cause
remanded.