Beach & Eddy vs. Baldwin.

14  597
63a  526

## BEACH & EDDY vs. BALDWIN.

1. The remedy by attachment being strictly statutory, and doubtless as stringent *ex vi termini*, as the legislature designed it should be, when instructions are given in the words of the law itself, whether other instructions by way of amplification or explanation ought to be given, must depend much upon the nature of the case.

2. A fraudulent disposition of property and effects, so as to hinder or delay creditors, is good ground for an attachment.

3. If the husband be insolvent, and the wife with his money, or funds rightfully belonging to

Beach & Eddy vs. Baldwin.

him, and under his actual control, as paid by his consent, procurement or connivance, out of funds rightfully belonging to him, but not under his actual control, secures a conveyance of property to a trustee for his special use, it may be reached by attachment for the debts of the husband. But if the consideration be paid by the wife, in good faith, out of money acquired by her own skill and industry, for her own maintenance, and the money was never in the actual possession of the husband, or under his actual control, and if the husband did not consent to, connive at, or procure the purchase, or interfere in any way therewith, with intent to hinder, delay or defraud existing or subsequent creditors, the conveyance is not fraudulent within the meaning of the law concerning attachments.

4. The husband may have a *legal right* to money with which the wife secures a conveyance to her own separate use, and yet not be guilty of such fraud as is contemplated by the law of attachments, in tacitly leaving it entirely to her own disposition and control.

## ERROR to St. Louis Court of Common Pleas.

Todd & Krum for plaintiffs in error.

I. The court should have given instruction No. 1, because it is law applicable to the evidence in the case, and not otherwise supplied. No. 5 does not supply it, because No. 1 makes a fundamental disposition of *any* property to defraud *any* creditors sustain this suit. The refusal of this, and giving No. 5, tells the jury that No. 1 is not law.

II. Instructions Nos. 2 and 4 should have been given, as containing the law applicable to the facts of the case, precisely and fully. Appellants also insist that No. 3 should have been given. 3 Johnson Chan. R. p. 492 to 500 and following; 4 ib. 454; 12 J. R. Ch. R. p. 536, 557; 9 Mo. R. p. 600, 628; 11 ib. 540; 12 ib. 169; 9 Cow. 73; 18 Wend. 375, 394 These show that a voluntary settlement in favor of wife, &c., the grantor being insolvent, is fraudulent, and to be adjudged as designed to defraud creditors    That money acquired by a wife, the husband being with her, as in this case by Mrs. Baldwin, always becomes and is the absolute property of the husband. Salk. 114; Tucker's Com. p. 442; 4 Den. 439; 7 Pick. R. 65; 8 Mass. R. 229; Chancy on Rights, p. 3; 8 Wheat. R. 242; Wagman on Husband.

III. Instruction No. 6 is erroneous in this, to wit: It submits it to the jury to consider as material, admitting that the money paid on the purchase of the house and lot was defendant's, whether it was at the time under his control or was paid with his consent, &c.; thereby telling the jury that in ordinary cases a man's wife can in law have money of her husband's, and lay it out in large purchases, and yet the money not be under his control, nor the purchases be with his consent, the law being, as insisted by appellant in a case like this, the very contrary.

IV. Instruction No. 8 is erroneous in making it material, whether the monies paid on the purchase was earned and drawn in a lottery by defendant's wife, and had been always in her control and supervision, and that *she* purchased in *good faith*

V. The court should have given No. 10, for it was law, and had a material bearing upon Nos. 6 and 8 for a proper understanding thereof by the jury. By its refusal also, the jury were told expressly what, under the evidence, they had been told inferentially before, in Nos. 6 and 8, to wit : that a husband's money in the control and possession of his wife, was not in his control and possession.

VI. The giving of Nos. 8 and 9 must have misled the jury.

VII. The claim of plaintiffs was one in assumpsit. It is not thought necessary to cite authorities for this, but see 3 J. R. 183; 14 Vermont R, 283.

VIII. The verdict is clearly against the law under the evidence, and against the evidence.

CROCKETT & KASSON, for appellee.

I. The instructions given by the court present the law as favorably as possible for the plaintiffs. The word "fraudulently" in the statute cannot be separated from an *intent* in the mind of the debtor; *mala fides* must exist; nor the words "disposed of" from an external act, executed by him. The first instruction by the court (No. 5) cannot be objected to. It is the precise words of the statute.

The 2nd instruction by the court (No. 6) is precisely applicable to the state of the evidence, and carries the effect of the statute to the extreme verge of the law. If the money belonging to him, but not under his control, was paid by another in whose possession it was and without the defendant's "consent, procurement or connivance," it is not possible that there was either the fraudulent intent, or the actual disposition on his part. It is morally impossible.

The third instruction by the court (No. 7) extends to the jury the utmost latitude of enquiry consistent with the law, and was favorable to the plaintiff rather than to defendant, as were also, in fact, the preceding instructions.

The fourth instruction by the court, (No. 8,) is the only one purporting to be favorable to defendant, and is only the appropriate converse of the second instruction. It requires good faith, and fredom from all participation in the act complained of, on the part of the defendant.

These instructions cover the whole ground to which instruction No. 9 was added, though immaterial under the circumstances, certainly, the court will not feel bound to stretch the law to snatch a homestead from the wife, by whose patient earnings and sacrifices it was secured without any evidence showing the participation therein of the defendant.

II. The words of the statute "so as," in the affidavit, are equivalent to "with intent," taken in connection with the preceding clause of the affidavit. This, also, the plaintiffs admit by the terms of instruction No. 1. "Fraudulent conveyance," Bonvier's L. Dictionary; Powell vs. Matthews X Mo., 52; Switen vs. Carson, IX Mo. 741; Sibly vs. Hood, 3 Mo. 206.

A voluntary conveyance is not fraudulent *per se*. The *bona fide* must be ascertained and determined by the jury. And so in the case at bar, "whether there was any depravity in the act, would depend upon the consciousness of the party doing it, and that is a question with which the courts have nothing to do." It belongs to the jury. But the plaintiffs' instructions from one to four, inclusive, assume the fraud, by the intent; and leave only an act, which may have been wholly honest, to be found by the jury. The word "fraudulently" is studiously omitted in all plaintiffs' instructions. See, on this point, Lane vs. Kingsbury, 11 Mo. 409.

Instruction No. 10, in its application to this case, had it been given, would, consequently have misled the jury; or, if not, it would have been improper in a question of intent for the jury.

III. Not only is the defendant here, a non-participant in the alleged conveyance, but the conveyance itself took place prior to the commission of the tort, out of which the alleged liability occurred. This court has, at this time, decided that attachment does in no case lie for a tort; and the plaintiffs cannot voluntarily convert a tort into implied assumpsit, long subsequently to the alleged fraudulent conveyance, and then sue by attachment, and break up a pre-existing title. The indebtedness is not founded on a contract, but on a tort; and for that reason, attachment does not lie. Such a case is not within the statute.

IV. In the fact, that the wife was permitted to take her own earnings is no element of wrong or suspicion. Gentry vs. McReynolds, 12 Mo., 534.

---

Beach & Eddy vs. Baldwin.

---

BIRCH, J., delivered the opinion of the court.

The first suit was assumpsit and attachment for money had and received by the defendant for the use of the plaintiffs—the affidavit alleging that the defendant had "fraudulently disposed of his property, so as to hinder and delay his creditors." The defendant filed the usual plea, in the nature of a plea in abatement, and the issues thus raised was the only one in the case.

Upon the trial, the plaintiffs introduced evidence to the effect, that in the year 1841, the defendant entered into their employment as book-keeper and cashier, at a yearly salary of about six hundred dollars; and so continued till the fall of 1848. That during that period, he appropriated to his own use about four thousand seven hundred dollars of the money of plaintiffs, which he kept concealed by forcing balances on the books of the plaintiffs; and that said appropriations began in November, 1841, and continued to July, 1848. That defendant was poor when he went into the plaintiffs' employment in St. Louis, and was largely indebted in Cincinnati, his former residence, owing the Commercial bank alone of that place, $7,697 62, and that debt remained unpaid at the time of the trial of this suit. That for the support of himself and wife, after his arrival in St. Louis he depended on his salary—his wife also teaching school. That in the month of May, 1844, Joseph Hall, of the city of St. Louis, conveyed to Samuel Willi of the same place, for the sum of $3,850, a lot of ground in that place, upon which there was a valuable house, in trust for the sole use, &c., of the defendant's wife, and that ever since that time the defendant and his wife have occupied said house and lot.

The defendant, by cross-examination of the witnesses of the plaintiffs, and by the testimony of their own witnesses, proved that the wife of the defendant earned by teaching school $500 a year, and that she taught three or four years; that she made the bargain for her teaching, and received and receipted for the money herself; that from a sale of her jewelry she received $140, and that before drawing the money in a lottery hereinafter mentioned, she had several hundred dollars, and loaned it out through an agent of her own obtaining; that shortly previous to the purchase of the property from Hall, she drew a prize of $8000 in a lottery, with a ticket she had purchased herself, and that she received a portion of this money and used it in the purchase of the property attached and here in suit; that she had previously been in the habit of depositing money in her own name in the bank of Missouri and drawing it out on her own check; that she bargained with Dr. Hall for

the house and lot, and that from her he received the money, and that he never had a word to say, or any thing to do, with her husband, or the husband with him, respecting the transaction or any portion of it.

It was proven that the defendant and his wife since their residence in St. Louis had lived very economically—at an expense probably not exceeding $300 a year, and that the·wife was very economical, saving and industrious.

This being the substance of all the testimony, and the question in this court depending entirely upon the action of the judge below in giving and refusing the instructions which were asked for, it will be proper in the view we have taken of this case to copy the whole of them. The first four were asked for by the plaintiffs and refused. The next four were given on the court's own motion. The 9th was given at the instance of the plaintiffs, and the 10th refused. They are as follows:

1. If the jury believe from the evidence, that the defendant, before the suing out of the attachment in this suit, had disposed of any of his property, in order to hinder and delay his creditors, or any of them, they ought to find for the plaintiffs.

2. If the jury believe from the evidence, that the consideration of the deed to Willi, given in evidence, proceeded from defendant, and that the object of said deed was to protect the property therein conveyed from indebtedness of defendant, and that at the time said deed was made defendant was unable to pay his debts and was indebted to the plaintiffs for the claim sued for in this case, or any part thereof, then they ought to find for the plaintiffs.

3. If the jury believe from the evidence, that at the time of the execution of the conveyance to Willi, given in evidence, the defendant was the husband of Julia A. Baldwin, in said deed mentioned, and was insolvent and unable to pay his debts, and that the consideration of said conveyance proceeded from the defendant, and that the debt sued for in this case, or any part thereof had accrued at the date of said conveyance, they ought to find for the plaintiffs.

4. If the jury believe from the evidence, that the consideration for the deed of conveyance given in evidence, or so much thereof as was paid, was furnished to Mrs. Baldwin, while the wife of the defendant, then the jury should find that the consideration of said deed proceeded from the defendant, unless the defendant proves that the consideration so furnished by Mrs. Baldwin was hers, independent of all right of Baldwin (the defendant) thereto. And the jury are further instructed, that if the condsideration furnished consisted of moneys earned by Mrs. Baldwin, and drawn by her in a lottery, and proceeds

of jewelry and the like, such moneys belonged to the defendant, and the consideration of said deed proceeded from the defendant.

5. If the jury believe from the evidence, that the defendant had, at the time this suit was commenced, fraudulently disposed of his property and effects, so as to hinder or delay his creditors, they will find for the plaintiffs.

6. If the jury believe from the evidence, that at the date of the deed to Willi, the defendant was the husband of Julia A. Baldwin, and was insolvent and unable to pay his debts, and that the consideration money in said conveyance was paid by defendant, or was paid out of funds rightly belonging to him and under his actual control, or was paid by his consent, procurement or connivance, out of funds rightly belonging to him, but not under his actual control, and that the plaintiffs were creditors of the defendant at the time, they will find for the plaintiffs.

7. The jury will take into consideration all the circumstances connected with the making of said deed, in order to ascertain whether it was made by him or out of his funds, at his instance or with his consent, procurement or connivance, so as to hinder and delay his creditors.

8. If the jury believe from the evidence, that the consideration in said deed was paid by Mrs. Baldwin in good faith, out of money acquired by her own skill and industry, for her own maintainance, and by a lottery ticket owned by her and bought with such separate funds, and that such money was never in the actual possessiion of her said husband, or under his actual control, and that he did not consent to, connive at, or procure the purchase of said property by his wife for her separate use and benefit, or interfere in any way therewith, with intent to hinder, delay, or defraud existing or subsequent creditors, then said conveyance was not a fraudulent disposal by the defendant, of his property and effects so as to hinder and delay his creditors, within the contemplation of the attachment act.

9. If the jury believe from the evidence, that the money paid towards the deed to Willi, given in evidence, was in the hands of Mrs. Baldwin when paid, and earned by teaching, and drawn in lottery, and acquired from the sale of jewelry, and that she at the time was the wife of the defendant, than said money rightly belonged to the defendant.

10. Any money in the hands of Mrs. Baldwin, while wife of the defendant, the jury are to consider under the control of and in the possession of the defendant.

The only question for the jury in this case being, whether at the time of suing out the attachment against the defendant he had "fradulently disposed of his property so as to hinder and delay his creditors;" that

being the issue raised by the very words of the affidavit upon which the suit was founded—the action of the court in reference to the instructions must of course be considered with reference to their application to that issue alone. In this point of view, the propriety of refusing the first instruction which was asked for by the counsel for the plaintiff, which pretermitted the question of the "fraudulent" disposition of the property, is too apparent and conclusive to need elucidation.

So, too, as to that part of the instruction which would have added to the words of the statute and the words of the affidavit, as to hindering or delaying his creditors, the words "or any of them." The remedy by statute being strictly statutory, and doubtless as stringent *ex vi termini* as the legislature designed it shoul be, it has been heretofore holden by this court (in Temple vs. Cochran,) that where instructions were given in the words of the law itself, this court would feel disinclined to criticise the considerations which might have influenced the court below in declining to give additional ones by way of amplification or explanation. It is perhaps proper to remark, however, as was suggested in a subsequent case, that where the case is such as that additional instructions are necessary, and may be given without misleading the jury, it is proper to do so—so that indeed, much may depend upon the nature of the case and the discretion of the judge before whom it is tried. In many cases, as in this, a multiplicity of instructions might be so used before the jury as to complicate instead of simplifying the the issues. Here the affidavit, copying the law, alleging that the defendant "fradulently disposed of" his property, and after attaching property which it charged was purchased with the defendant's money in the hand of his wife, a series of instructions are asked for, some of which are given and some refused, involving not only the whole doctrine of the husband's right to money earned by the wife, but so worded and constructed as to render arguable at least a construction which might perplex and mislead the jury, and result in a verdict wholly erroneous. Was it contemplated by the framers of the attachment law, that there should be thus usurped from the patient and enlightened deliberations of equity, and conferred upon a jurisdiction comparatively summary and statutory, the decision of questions thus intricate and important? Did the legislature mean this, or had they not rather in view cases where the original right to the property was comparatively clear, and where the disposition of it, alone, (whether fraudulent or otherwise,) was to constitute the issue? It is not necessary to here solve or settle such a proposition, seeing that the judge below, in the 9th instruction sufficiently declared the law concerning the husband's right to

the money hypothetically alleged to have been given for the property, whilst refusing in the next and last instruction which was asked, to declare that such money was necessarily under his control and in his possession. We can well imagine the fact to have been that he had strict legal right to the money which was saved and otherwise procured by his wife, whilst at the same time he was guilty of no such fraud as is contemplated by the attachment law, in tacitly leaving it entirely to her own disposition and control. In other words, but without in any respect intending to pre-judge the ultimate equity of a cause like the present, we can well enough imagine that the right to the property was in Baldwin, the husband, albeit he has been guilty of no such "frauaulent" disposition of it, as to render either him or it liable in the form of action which has been here adopted.

The more critical the reference to the instructions passed upon and given by the judge below, the more will it be apparent that this distinction was, as it should have been, ever present to his understanding ; so that perceiving, as we do, from the whole record, that the only issue which was legitimately involved was intelligently and fully presented to the jury, we are of opinion that the case was tried well enough, and that the judgment of the court of common pleas should be, as it is, affirmed.