STATE OF MISSOURI, TO THE USE OF IRWIN E. LITTLE, Defendant in Error, *v.* BERNARD DONNELLY ET AL., Plaintiffs in Error.

February 8, 1881.

1. Where property levied upon is claimed by a third person, and the execution creditor thereupon executes and delivers to the sheriff an indemnifying bond, the claimant has a right of action upon the bond as well as an action of trespass against the principal and sureties therein.

2. That the bond indemnifies the sheriff, if otherwise conditioned according to law, will not prevent an action upon it in the name of the State to the use of the claimant, even without an assignment by the sheriff.

3. A contract by which the former owner of a business agrees to work for his successor at a salary equal to one-half of the net profits, each agreeing to pay one-half of the outstanding indebtedness, is not a contract of partnership.

4. An instruction that the delivery of "actual and physical possession" of personalty sold is necessary to pass title as against creditors of the seller, is properly refused.

5. The incompleteness of an instruction, if it is not misleading, and if no fuller instruction is asked, is not ground for a reversal.

6. It is the duty of courts, and not juries, to interpret contracts.

ERROR to the St. Louis Circuit Court, THAYER, J. *Affirmed.*

SMITH & McCANN, for the plaintiffs in error, cited: *Wright* v. *McCormick*, 67 Mo. 426 ; *Lessem* v. *Herriford*, 44 Mo. 323 ; *Claflin* v. *Rosenberg*, 42 Mo. 439 ; *Bishop* v. *O'Connell*, 56 Mo. 158 ; *Bergert* v. *Borchert*, 59 Mo. 80.

JOSEPH S. LAURIE, for the defendant in error.

THOMPSON, J., delivered the opinion of the court.

This is an action on an indemnifying bond given by the defendants below to the State of Missouri, to indemnify John Finn, sheriff, against damages and costs in consequence of a certain levy made by him on the property of Samuel A. Smith, defendant in an execution, at the instance and request of the defendants Bernard Donnelly and Jacob Nickles, plaintiffs in said execution. The cause was tried below by a jury. There was a verdict and judgment for the plaintiff, a motion for a new trial, which was overruled, and the defendants prosecute this writ of error.

It appears that prior to July 30, 1877, Samuel A. Smith and Albert G. W. Smith were engaged as partners, in the city of St. Louis, in the business of selling ice and coal, under the firm-name of the Troy Ice Company. On that day Irwin E. Little, the plaintiff below, bought out the interest of Albert G. W. Smith for $375 in cash, and that of

Samuel A. Smith for $325, for which he gave his note, payable in two years. A bill of sale was duly executed by the Smiths to Little, and recorded in the office of the recorder of deeds in the city of St. Louis. At the same time the plaintiff and Samuel A. Smith entered into the following written agreement : —

"This agreement, made and entered into this 30th day of July, A. D. 1877, by and between Irwin E. Little and Samuel A. Smith, both of the city and county of St. Louis, and State of Missouri, witnesseth : That, whereas, the said Irwin E. Little, party of the first part, has this day purchased and become the owner of all the goods, chattels, and good-will of the Troy Ice Company, of which said company the said Samuel A. Smith, party of the second part, was a member : Now, for and in consideration of the amounts hereinafter mentioned, the said party of the second part, Samuel A. Smith, hereby agrees to work and labor for the said Irwin E. Little, and to take charge of and manage the work necessary to be done in carrying on the business of buying and selling ice and coal, from the same place and substantially in the same manner as has been heretofore done by the Troy Ice Company, giving to the said business his time and attention, and in matters pertaining thereto shall at all times do that will best advance the interests of the said Irwin E. Little.

"The said Irwin E. Little is to keep, or cause to be kept, true and accurate books of all the transactions done by him in the way of sale of ice, and is to pay over to said Samuel A. Smith one-half ($\frac{1}{2}$) of all the net profits that shall be made in the sale of ice, coal, hauling, etc., after deducting the expenses and losses to the stock and property of the said Irwin E. Little that shall accrue and be made by the said Irwin E. Little in the business in which he is engaged ; and the profits so made and received by the said Samuel A. Smith he shall receive and accept as payment in full for the labor and time he shall expend in the employ of the said Irwin E. Little. And it is further agreed, that the said

Irwin E. Little shall be responsible for and pay one-half ($\frac{1}{2}$) of the expense account now outstanding and unpaid that has been made by the Troy Ice Company since the 26th of March, 1877, to wit: rent now due for lot; fuel bill of $50 to $55; horse-shoeing bill, $7.50; note of $42.10; and one-half of the amount due on a chattel mortgage due to the Mississippi Ice Company.

" This agreement shall continue until such time as the parties hereto shall mutually agree to dissolve connection with each other: *Provided*, that either party may terminate it at any time by giving to the other twenty days' notice of his intention so to do, said notice to be in writing.

" In witness whereof, the parties hereto have hereunto set their hands and seals, the day and year first above written.

<blockquote>
" IRWIN E. LITTLE.    [Seal.]<br>
" SAMUEL A. SMITH.    [Seal.]"
</blockquote>

Samuel A. Smith continued to conduct the business under this contract, under the supervision and control of Little, at the office of the Mississippi Ice Company, of which he was secretary, he receiving the moneys collected from the business and paying the rent, bills for which were made out to him in his name, and he making frequent visits of inspection to the premises, until January 18, 1878, when, becoming dissatisfied with Smith, he sent him the following two notices: —

<blockquote>
" JANUARY 18, 1878.
</blockquote>

"*Mr. S. A. Smith.*

" DEAR SIR: You are hereby notified, according to agreement, that thirty days after this date your services are no longer required.

<blockquote>
" Respectfully yours,<br>
" IRWIN E. LITTLE."
</blockquote>

<blockquote>
" JANUARY 18, 1878.
</blockquote>

"*Mr. S. A. Smith.*

" DEAR SIR: You are hereby notified, according to agreement bearing date July 30, 1877, that twenty days after

this date our business relations in regard to Troy Ice Company shall cease to exist.

"Respectfully yours,

"IRWIN E. LITTLE."

Five days after the date of these notices, Smith confessed a judgment in the Circuit Court of the city of St. Louis in favor of Donnelly and Nickles, defendants below, for the sum of $400 and costs, which, on the following day, was levied on certain personal chattels included in the above-named bill of sale to Little. On the same day Little made a demand on the sheriff for the property, in conformity with the statute (Act March 3, 1855, sect. 3; Rev. Stats., p. 1555, sect. 3), claiming it by virtue of absolute ownership. On the following day the property was appraised at $288.75, and the defendant Bernard Donnelly thereupon executed, with the defendants William H. Wilson and Patrick Donnelly as sureties, the bond of indemnity which is here sued on. This bond was, on the thirteenth day of May, 1878, assigned by John Finn, sheriff, to the plaintiff, Little, as the party in interest, who thereafter brought this suit upon the same.

At the trial, the plaintiffs in error (defendants below) objected to any testimony being received under the petition, for the reason that there was a defect of parties, in this: that the plaintiff, Little, could not bring suit on the bond in the name of the State, but that the only person entitled to sue was John Finn, the sheriff. This point, we think, was not well taken. The act of March 3, 1855, under which the bond was taken, is still in force. *Dodd* v. *Thomas*, 69 Mo. 364. The statute itself (sect. 4) gives an action upon the bond to the claimant, in the name of the State to his own use; and this action was so brought. Nor is there any force in the objection that, because the condition of the bond was to indemnify the sheriff, John Finn, he alone could sue upon it, and could not part with his right of action by assigning the bond to the claimant of the property. The statute (sect. 2) recites that the bond "shall

be made payable to the State of Missouri, conditioned that such plaintiff will pay to such claimant all damages that he, the said claimant, may sustain in consequence of such levy, and in consequence of any sale which may be made under and by virtue of such execution or attachment." The condition of the bond sued on is, that " if the plaintiff shall indemnify said John Finn, sheriff, against all damages and costs which he, said John Finn, shall sustain in consequence of such seizure and sale of the property aforesaid under said writ, and, moreover, shall pay to and satisfy said claimant, and any person or persons claiming title to said property, all damages which such person or persons may sustain in consequence of such seizure and sale, then this obligation shall be null and void ; otherwise it shall remain in full force and virtue." For the purposes of this action the clause of the bond which indemnifies John Finn, sheriff, may be rejected as surplusage, and still it remains a bond in strict conformity with the statute. Nor is it a good objection that John Finn could not confer a right of action upon the claimant by assigning the bond to him. No assignment was necessary to confer a right upon the claimant to bring an action on the bond. The statute (sect. 4) gives the claimant the right to sue without any assignment, and the assignment on the back of the bond in this case may well be rejected as surplusage. The law seems to be, that when a person other than the defendant in the execution claims the property levied on, in conformity with the statute, as was done in this case, and thereupon the plaintiff in the execution executes and delivers to the sheriff a sufficient *indemnity*-bond, there are two remedies open to the claimant : an action on the bond (*Bradley* v. *Holloway*, 28 Mo. 150 ; *The State to use* v. *Watson*, 30 Mo. 122 ; *Railroad Co.* v. *Castello*, 30 Mo. 124 ; *Dodd* v. *Thomas*, 69 Mo. 364. See also *The State to use* v. *Johnson*, 1 Mo. App. 219), and an action of trespass against the principal and sureties therein. *The State to use* v. *Mitchell*, 1 Mo. App. 386, 399 ; *Peckham*

v. *Glass Co.*, *ante*, p. 459. It cannot be objected that the claimant did not resort to the latter remedy, for the former is given by the terms of the statute.

In order to understand the other positions of the plaintiff in error, it is necessary to state that the contention of the plaintiff below is that, by virtue of the purchase of July 30, 1877, the executing and recording of the bill of sale, the taking possession of the property thereunder, and the contract made between him and Samuel A. Smith on the same day, he became the absolute owner of the property, in such visible and notorious possession thereof as satisfies the Statute of Frauds, and that Smith had no proprietary interest therein, was not his partner, but was his hired employee, whom he was at liberty to discharge at pleasure, as he afterwards did ; while, on the other hand, the contention of the defendants below is that, so far as Samuel A. Smith's interest in the property was concerned, the purchase was fraudulent and simulated, designed to enable Smith to hold his creditors at bay, while he and the plaintiff, Little, should carry on the business as partners. As there was testimony to sustain each of these positions, we have only to look into the instructions to see if the case was properly put to the jury.

1. There was no error in refusing the instructions asked by the defendants, based upon the hypothesis that there was evidence tending to prove the existence of a partnership between the plaintiff, Little, and Samuel A. Smith. The rule is, that it is error to refuse instructions based upon a hypothetical state of facts which there is evidence tending to prove. *Douglass* v. *McAllister*, 3 Cranch, 300 ; *Morris* v. *Platt*, 32 Conn. 75, 82 ; *Carpenter* v. *The State*, 43 Ind. 371, 373 ; *Nels* v. *The State*, 2 Texas, 280 ; *Howard* v. *Insurance Co.*, 6 Mo. App. 577. But the rule exacts that the evidence tending to prove such a state of facts shall be competent evidence, such as the jury may rightfully consider. The judge is not bound to give hypothetical instructions, based upon a state of facts which can be inferred only

from incompetent evidence, which was inadvertently suffered to go to the jury. The only competent evidence as to the relation of the plaintiff, Little, and Samuel A. Smith, after the purchase of the property of the Troy Ice Company by Little, was the instrument of writing executed by Little and Smith contemporaneously with that sale. As there was no attempt to show any subsequent contract, or any subsequent modification of this contract, the testimony of the Smiths that the relation of Samuel A. Smith to the plaintiff was that of a partner, was incompetent; for it was simply an attempt by parol evidence to vary the terms of a written contract, which was clearly worded, and did not need the aid of parol explanation. *Koehring* v. *Muemminghoff*, 61 Mo. 403.

2. The learned judge rightfully instructed the jury that this instrument, if entered into in good faith, did not constitute a contract of partnership in such a sense as to make Samuel A. Smith a part owner of the property. It was simply a contract of employment, by which the salary of the employee was made equal to one-half of the net profits, he agreeing to pay one-half of certain outstanding debts. In the instructions given by the learned judge, of his own motion, the jury were properly told that if this agreement between Little and Samuel A. Smith was made simply to deceive the public as to their true relations, and that they really agreed to become partners, then the sheriff had the right to levy on the property of Samuel A. Smith, and they should find for the defendants. This obviated the necessity of giving the instructions on the hypothesis of partnership, asked for by the defendants.

3. Nor was it error for the court to instruct the jury as to the legal effect of this instrument. The interpretation of written instruments is always a question for the court, and it is error to submit such questions to the jury. *The State to use* v. *Lefaivre*, 53 Mo. 470; *Edwards* v. *Smith*, 63 Mo. 119, 127.

4. The question which has given us most difficulty is, whether the instructions given and refused involved a correct application to the evidence of sect. 10 of our statute relating to fraudulent conveyances. This statute reads as follows : " Every sale made by a vendor, of goods and chattels in his possession, or under his control, unless the same be accompanied by delivery in a reasonable time (regard being had to the situation of the property), and be followed by an actual and continued change of the possession of the things sold, shall be held to be fraudulent and void as against the creditors of the vendor, or subsequent purchasers in good faith." Wag. Stats. 281, sect. 10 ; Rev. Stats., sect. 2505. It has been frequently held by our Supreme Court that the " actual and continued change of possession " contemplated by this statute must be open, notorious, and unequivocal, such as to apprise the community, or those accustomed to deal with the party, that the goods have changed hands, and that the title has passed out of the seller and into the purchaser. *Wright* v. *McCormick*, 67 Mo. 426, 429 ; *Bishop* v. *O'Connell*, 56 Mo. 158 ; *Claflin* v. *Rosenberg*, 42 Mo. 439, 449. See also *Lessem* v. *Herriford*, 44 Mo. 325, which involved the construction of the statute of 1855 in this particular. " This," said Wagner, J., explaining the foregoing in *Claflin* v. *Rosenberg*, the leading case on this subject, " must be determined by the vendee using the usual marks and *indicia* of ownership, and occupying that relation to the thing sold which owners of property generally sustain to their own property. There must be a complete change of the dominion and control over the property, and some act which will operate as a divestiture of title and possession from the vendor and a transferance into the vendee. This necessarily excludes the idea of a joint or concurrent possession. It may not be essential that the goods should be moved into a new or different house ; but there must be some open, notorious, or visible act, clearly and unequivocally indicative

of delivery or possession, such as taking an invoice, putting up a new sign, or any other reasonable means which would impart notice to a prudent man that a change had taken place. The statute provides that the change shall be actual and continued. It must, therefore, be neither formal nor temporary. But, where the whole law has been complied with, we see nothing to prevent the employment of the vendor to render services in and about the property, in the same manner as any other agent or employee." 42 Mo. 450.

Did the instructions given and refused fairly explain to the jury the application of the statute, as thus construed, to the facts in evidence? It will be seen, from what has preceded, that this is not simply a case where a statute has been *interpreted* by the courts ; it is a case where a statute has been *construed,* — that is to say, *built up,* — in the sense which distinguishes interpretation from construction. See Lieber's Hermeneutics, chap. 3. It is a case where the Supreme Court found that the statute, by reason of the generality of its terms, could not be administered without an added explanation ; and this explanation the court has supplied. Although, in declaring the law applicable to a particular state of evidence, where the law is embodied in the statute, it will, in general, be sufficient to follow the language of the statute itself (*Jacobs* v. *McDonald*, 8 Mo. 565 ; *Beach* v. *Baldwin*, 14 Mo. 597, 603), yet where, as in this case, a statute which, by reason of the peculiarity of its wording or the use of technical terms therein, is liable to be misunderstood by the jury, and where an authoritative court has affixed to its terms a definite meaning, it is obviously not sufficient for the judge, in declaring it to the jury, to follow its precise terms, without adding the explanation to those terms which has been thus put upon them.

This error was avoided by the circuit judge who tried the case of *Bishop* v. *O'Connell*, 56 Mo. 158. He told the jury that the sale of the property in controversy to the

plaintiff was void, as against the creditors of the vendor, "unless it appeared from the evidence that such sale was accompanied by a delivery of the property sold in a reasonable time, regard being had to the situation of the property, and was followed by an actual and continued change of possession of the property prior to the levy of the execution, *and that such change of possession was open and notorious.*"

He also told them that "unless the sale was accompanied by a delivery of the property so sold within a reasonable time after the sale, regard being had to the situation of the property, and was followed by an actual and continued change of possession, *and that such possession was so open and notorious as to apprise the community that Swainson had ceased to be the owner of the property,* the sale was void as to creditors, and the plaintiff could not recover." His judgment was affirmed, the Supreme Court saying: "The instructions given for the defendant are in the language of the statute in reference to fraudulent conveyances, *and in precise conformity with the construction placed upon it by this court.*"

On the other hand, in *Claflin* v. *Rosenberg*, 42 Mo. 439, the Circuit Court refused to give the following instructions: "To entitle the interpleader, Simon Strauss, to recover in this case, he must satisfy the jury, by the evidence, that the goods in question were sold and delivered to him; that he took possession of the same after the purchase; that he had exclusive possession as against the said Rosenberg, and that the change of possession must have been an actual and visible change—such a change as to communicate to persons who had previously done business at the store of Rosenberg, aforesaid, that he no longer had possession or controlled the goods attached. Unless the jury are satisfied from the evidence that Simon Strauss had actual possession of the goods in question; that the change of possession was such as to communicate to purchasers at large that the defendant was no

longer in control of said goods, they are instructed by the court that, as against creditors, the sale is fraudulent and void, even although they believe from the evidence that the sale from defendant to said Strauss was in good faith and for a valuable consideration.'' These instructions, it will be seen, went further than the mere words of the statute, and embodied the meaning which the court placed upon them ; and hence the refusing of them was held error, and the judgment was reversed.

In the present case the defendants asked the following instruction, as applicable to this statute, which the court refused : '' The court instructs the jury that, in order to have any effect against his creditors, a debtor selling personal property must deliver over the actual and physical possession thereof to the purchaser ; otherwise, as to such creditors, the sale is void ; also, that the purchaser must take actual and physical charge of such property, and must keep and hold exclusive, notorious, and open possession thereof in himself ; and, also, that if such debtor is allowed to remain in the same possession thereof, after as well as before the pretended sale, then said pretended sale, as a matter of law, is void as to creditors.''

We think there was no error in refusing this instruction. The decisions already quoted declare that the change of possession must be *actual*, but none of them go so far as to declare that it must also be *physical*. This, in many cases, would be impracticable. For instance, the entire rolling-stock of a railway may be, and frequently is, sold under a chattel mortgage. The change of possession is actual, open, and notorious, so as fully to inform the community that such a change has taken place, and yet there is no '' physical '' change. The property continues to be used as before, and in the manual custody of the same employees. Such a sale could not be held fraudulent as to the creditors of the vendor. Whilst the court might have modified this instruction so as to make it conform to the law, and then

given it as modified ( *Coleman* v. *Roberts*, 1 Mo. 97 ; *Castle* v. *Bullard*, 23 How. 172, 190 ; *Clymer* v. *Dawkins*, 3 How. 674, 688 ; *Pleak* v. *Chambers*, 7 B. Mon.565, 569 ; *Dodge* v. *Rogers*, 9 Minn. 223 ; *Horton* v. *Williams*, 21 Minn. 187, 192 ), yet it was under no obligation to do so, the rule being that if a request for an instruction is erroneous in any particular, the court is at liberty to refuse it entirely. *Bryant* v. *Crosby*, 40 Me. 9, 19 ; *Fuller* v. *Coats*, 18 Ohio St. 343, 352 ; *Hodges* v. *Cooper*, 43 N. Y. 216 ; *Carpenter* v. *Stilwell*, 11 N. Y. 61, 79 ; *Grimes* v. *Martin*, 10 Iowa, 347 ; *Bevan* v. *Hayden*, 13 Iowa, 122, 127 ; *Lucas* v. *Brooks*, 18 Wall. 436.

In lieu of this request the learned judge gave, of his own motion, the following: " If the jury believe from the testimony that Irwin E. Little bought the property in controversy of S. A. and Albert Smith in good faith, on or about July 30, 1877, and paid for the same in the manner testified to by said Little, and if said property was delivered into the possession of said Little within a reasonable time after said purchase, and was in his possession at the time the same was levied upon and sold by the sheriff, then the plaintiff will be entitled to recover in this action.   *   *   * Under the laws of this State, every sale made of goods and chattels by any person must be accompanied by a delivery of the property sold within a reasonable time, and must be followed by an actual and continued change of possession of the property sold ; otherwise the sale is void as to creditors of the seller who were such creditors at the date of the sale.   Unless the jury find, therefore, that S. A. Smith and Albert Smith, within a reasonable time after the alleged sale, made a delivery of the property sold to the purchaser, and said purchaser continued in possession of the same down to the time of the levy, the sale was fraudulent as to the creditors of S. A. Smith who were such at the time of the sale, and the jury will so find.''

Whilst the second of these instructions lays down the law

to the jury in the words of the statute, neither of them, taken separately, nor both of them taken together, expound the meaning of the statute as given by the Supreme Court. If the defendants had asked for more specific instructions, and the court had refused to give them, we should have been constrained, on the authority of *Claflin* v. *Rosenberg, supra*, to reverse the judgment for that reason. But we understand the rule to be, that where the only objection to an instruction is that it is incomplete, not that it has a positive tendency to mislead, the giving of it will not work a reversal of the judgment, unless an explanation sufficient to make it complete is asked for and refused. *Koehler* v. *Wilson*, 40 Iowa, 183; *Sellick* v. *Turnpike Co.*, 13 Conn. 453. For this reason the defendants cannot complain that the court did not explain the meaning of the word "possession," as used in the statute, in accordance with the exposition of the Supreme Court.

The judgment is affirmed. All the judges concur.