# DECISIONS

# SUPREME COURT OF MISSOURI.

## SECOND JUDICIAL DISTRICT,

### SEPTEMBER TERM, 1841.

---

### SHEPHERD v. TRIGG.

Possession of personal property by the vendor after the sale, or by the
mortgagor after the mortgage, is not fraudulent *per se* as against
creditors and purchasers. It should be left to the jury to determine,
from all the circumstances, whether the transaction was bona fide
or fraudulent. (The cases of Rocheblanc v. Potter, 1 Mo. R. 561;
Foster v. Wallace, 2 Mo. R. 231; Sibley v. Hood, 3 Mo. R. 290;
and King v. Baily, 6 Mo. R. 576, so far as they conflict with this
decision, are overruled.)

Error to La Fayette Circuit Court.

*Todd & Wood for Plaintiff.*

1st. The mortgage from decedent to defendant was void
in law:

First, The mortgagor was largely indebted at the time of
its execution.

Second, The property remained with mortgagor, and never followed the deed.

Third, It contained a disposition of all his property to
one creditor.

Fourth, The defendant's debt was fictitious, and not real.

Fifth, There is no excuse or reason for the possession of the property not accompanying the deed.

2d. It became void as to creditors from matters post facto:

First, The property remained in possession of mortgagor from the date of the mortgage to his death, a period of nine years.

Second, The mortgagor used, sold, and disposed of it, as his own property.

3d. Because the fourth, fifth, sixth, and seventh instructions of the plaintiff were not given.

4th. Because the court erred in giving the instructions asked for by defendant:

First, It left with the jury to find as a fact, whether the mortgage was *in law void*.

Second, It asserted as law to the jury that, a knowledge in the plaintiff of its execution, concluded him, as to its legality.

Third, that if legally executed in the plaintiff's knowledge, no event or act could subsequently make it void as to the plaintiff.

5th. Evidence offered by defendant was illegally admitted:

First, The release purporting to be made by plaintiff and defendant jointly, to the deceased, was not proven to be executed by them.

Second, The original was not produced and proven.

Third, The mortgage from decedent to Thomas Hickman was irrelevant.

Fourth, Was incompetent, the original was not produced, or its execution proved.

Fifth, The proceedings by suit of Lamme & Hickman's heirs, against decedent, was irre'evant.

6th. The court erroneously overruled the new trial:

First, Verdict was against law.

Second, Against the weight of evidence. See Foster v. Wallace, 2 Mo. R. 231; Hood v. Sibly, 3 Mo. R. 290; King v. Bailey, 6 Mo. R. 575; Gooche's case, Cokes Reps. 61.

*Hayden for Defendant in Error.*

1st. That the mortgage from Stephen to Christopher Trigg, was a good and valid mortgage.

2d. That the possession of the property remaining with the mortgagor, does not vitiate and render the mortgage fraudulent *per se;* but that at most it is only *evidence* of fraud. Snyder v. Hitt, 2d Dana, 204; Barrow v. Paxton, 5 John. 258; Bissell v. Hopkins, 3d Cowen R. 188; Cadogan v. Kennet, 1 Coup. 432; U. S. v. Hood, 3d Cranch, 88; see also the authorities in 3d Cowen, in note 190, 192, 198; Steel v. Brown, 1 Taunt. R. 381.

3d. That the question of fraud in this case is a question of fact, and having been found by the jury not to exist in the cause, the judgment of the circuit court thereupon in favor of defendant ought to stand.

## Opinion of the Court by Tompkins, Judge.

James Shepherd brought his action of assumpsit in the circuit court of Lafayette county, against Christopher Trigg. The judgment of that court being given for Trigg, Shepherd brings the cause into this court by writ of error, to reverse the judgment of the circuit court.

It appears by evidence preserved in the bill of exceptions, that Shepherd, the plaintiff, and Trigg, the defendant in the circuit court, had become security to Stephen Trigg, the father of the defendant, in a note made by them to Jane Heard, for the payment of about two hundred and eighty-one dollars. Jane Heard afterwards obtained a judgment against the makers of this note, and the sheriff of Howard county collected on an execution issued on this judgment from James Shepherd, the plaintiff in error in this suit, one hundred and sixty-nine dollars; the remaining part of the judgment on said note, made to said Heard as aforesaid, being paid by Christopher Trigg, defendant in error. Stephen Trigg, the principal in the note on which the above mentioned judgment was obtained, in satisfaction of which

16

judgment Shepherd paid the aforesaid sum of $169, died in the spring of the year of 1836, nearly five years after the payment aforesaid by Shepherd, the plaintiff in error, and to recover this sum of money paid as aforesaid by him, Shepherd commenced this action in the circuit court against Christopher Trigg, defendant in error. Stephen Trigg died in Saline county, and the administrator testified that he sold articles of personal property of the deceased to the amount of four hundred dollars, and that various other articles of property found at the intestate's residence, were retained by Christopher Trigg, the defendant in error, being claimed under a mortgage. Another witness proved, that the same articles were always retained in the possession of the intestate, Stephen Trigg, till his death, and used by him as his own; and that after the death of said Stephen, the defendant in error retained possession of them until they were sold by the sheriff to satisfy the mortgage. The amount of the sales was about six hundred dollars. The defendant in error lived in the family of the deceased.

The defendant in error then read in evidence two mortgages, both made by Stephen Trigg, the deceased; the one to Christopher Trigg, the defendant in error; the other to the said Christopher Trigg and James Shepherd, the plaintiff in error. The latter mortgage, i. e. that to the defendant and plaintiff in error, was made to secure them the re-payment of any money they might be compelled to pay in consequence of being security as aforesaid for said Stephen Trigg, in the note made by them to Jane Heard. This mortgage was given for the articles retained and sold as aforesaid by the defendant in error, and it recited the first mentioned mortgage, which had been made by said Stephen Trigg, in his lifetime, to the defendant Christopher Trigg, and by this instrument most of the articles which were mortgaged to the plaintiff and defendant in error for the purpose aforesaid, appeared to have been previously mortgaged to the defendant in error, Christopher Trigg. Evidence was given to prove that Shepherd, the plaintiff in error, was informed from other sources of the fact that Christopher Trigg, the defendant in error, had a mortgage

of older date for much of the same property which had been mortgaged to them, the plaintiff and defendant in error, for the purposes aforesaid. Evidence was also given by the defendant in error to show that this mortgage was given to secure to him the payment of so much money by him advanced and loaned to the intestate, Stephen Trigg.

The jury were instructed, on the motion of the defendant in error, that if they believed that he never did take into his possession any property of which Stephen. Trigg died possessed, other than the property conveyed to him by the said Stephen by mortgage, and that the said mortgage was not fraudulent, and that the said Shepherd knew of the said mortgage at the time he became the security of the said Stephen Trigg, then the mere act of Stephen Trigg's retaining the possession in pursuance of the terms of the said mortgage, does not render said mortgage fraudulent as to plaintiffs; and the taking such possession does not make him executor of his own wrong.

Three instructions were asked by the plaintiff, which the court refused to give. The substance of these was the reverse of that given in behalf of the defendant.

The leading cases decided in Missouri on this head, are in order of time, proceeding from the latest to the earliest: 1st, King v. Baily; 2d, Sibby v. Hood; 3d, Rocheblave v. Potter. In the case of King v. Bailey, the broad ground is taken, that if a vendee take a conditional bill of sale of goods, and leave them in possession of the vendor, the sale will, so far as creditors are concerned, be fraudulent. See page 580, of the 6th vol. of Mo. Decisions. In Sibly v. Hood, the same ground is taken; see page 290 of the 3d vol. of Mo. Decisions. And the case of Rocheblave v. Potter, 1 vol. Mo. Dec. page 561, is cited and relied on. The facts in the case of Rocheblave v. Potter are these: One Justus Terrill removed to Missouri, and settled in St. Louis county in the year 1818, bringing with him a slave, the subject matter of that suit. Terrill had also other slaves. In the year 1820, he visited the State of Louisiana, and there, on the 15th day of April of that year, executed a bill of sale to Potter for that slave and others. Immediately after the

execution of this bill of sale, Terrill returned to his residence in St. Louis county, and there resided until the 10th day of February, 1821, when he died in the possession of the slave in question in that suit, and of the others named in the bill of sale; and by his will directed his executors to sell and dispose of the slave in question, along with the others named in the said bill of sale. The executors of Terrill, in pursuance of his will, advertised in one of the newspapers of the city of Saint Louis, and sold at public sale the slave in question. This slave was purchased by Mrs. Mary Lisa, and by her sold to Beebee, who sold to Rocheblave, the plaintiff in error, in the case cited. Thus it is seen that, for three years next after the sale of this slave in Louisiana to Potter, it remained in the possession of the vendor, Terrill, in Saint Louis county, when it was sold in pursuance of his will, the purchaser being ignorant of the sale to Potter. For we are told that the bill of sale made by Terrill to Potter, was not recorded in Saint Louis, and that neither Mrs. Lisa, Beebee, nor Rocheblave, had any notice or knowledge until after the sale and delivery of the slave to Rocheblave, of the existence of that bill of sale; for Potter, during all the intermediate time, had resided in Louisiana, and had never taken possession of the slave. The report continues, "many other facts were found which this court, in the view they take of the subject, need not now consider."

The supreme court, on the authority of this case, and also on the authority of the case of Wallace v. Foster, 2 Mo. Decisions, 231, declared in the case of Sibly v. Hood the law to be, that when the owner of personal property sells it to another person, either on a real or feigned consideration, and the property is nevertheless left in the possession of the vendor, creditors of the vendor are entitled to have such property sold to pay their debts. It may, however, be remarked, that in the case of Sibly v. Hood, it was not necessary to decide this point: for, at page 200 of the 3d vol., it seems that it did not appear in that case that Sibly, according to the agreement betwixt him and the holder of the property then in dispute, had any claim or lien on the property. In King v. Baily, it was decided that if the vendor be allow-

ed to retain possession of property after a conditional sale, it will be liable to be sold to pay the debts of the vendor.

The courts of the several states of this Union seem of late much divided in opinion, whether the possession continuing in the vendor is only prima facie evidence of fraud, and may be explained; or whether it be absolutely fraud, incapable of being explained. I am rather inclined to think, that where such decisions have been made, that they were made under the influence of strong feeling, excited by evidence such as was given in the case of Rocheblave v. Potter, above cited, otherwise the courts would, in all cases, permit the purchaser to introduce evidence to explain, if he could, why the possession did not accompany the right of property, or in other words, why the purchaser did not claim the possession of the purchased property.

In the case of Rocheblave v. Potter, a special verdict was found, and the court declared the law on that verdict. In Sibly v. Hood, the opinion of the court on the question of fraud was rather uncalled for, as the case might well have been decided on other grounds. There remains then, only two cases, i. e. Wallace v. Foster, and King v. Baily, which strongly support the doctrine, that in cases of sale possession must accompany the right of property in order to secure the purchaser's right of property against creditors of the vendor. I am inclined to believe that the better course would be in all cases to permit the purchaser to show cause why he left the vendor in possession of the property, even when there was an absolute sale. But the defendant in error in this cause claims to have the right to the property here under a mortgage deed where the possession of the intestate is consistent with the claim of the defendant in error. For much better reason, then, I am inclined to believe that the defendant in error ought to be allowed to prove that his claim to the property mortgaged was fair, and consequently that the instruction given by the circuit court at his instance was correct, and that the circuit court committed no error in refusing the instructions asked by the plaintiff in error.

It is the opinion of all the court that the judgment of the circuit court ought to be affirmed, and it is accordingly affirmed.

Possession of personal property by the vendor after the sale, or by the mortgagor after the mortgage, is not fraudulent per se as against creditors and purchasers. It should be left to the jury to determine, from all the circumstances, whether the transaction was bona fide or fraudulent. (The cases of Rocheblave v. Potter, 1 Mo. R. 561; Foster v. Wallace, 2 Mo.R. 231; Sibly v. Hood, 3 Mo. R. 290; and King v. Baily, 6 Mo. R. 576, so far as they conflict with this decision, are overruled.)