AARON CLAFLIN and CHARLES F. CLAFLIN, Appellants, v. SAMUEL ROSENBERG; SIMON STRAUSS, Interpleader.

1. *Practice — Trial —Instructions —Evidence tending to prove an issue always submitted to a jury.*— An instruction declaring that upon the evidence a claimant cannot recover, is only justified or warranted where there is a total and complete failure of evidence to uphold a verdict.   Where there is any evidence tending to prove the issue, it must be submitted to the jury.

2. *Fraudulent Conveyances, statute concerning — Sale — Change of Possession, what constitutes.*— The tenth section of the act concerning fraudulent conveyances (Gen. Stat. 1865, p. 440) necessarily implies that, as against the vendor, the possession must be exclusively in the vendee.   There must be a complete change of the dominion and control over the property sold, and some act which will operate as a divestiture of title and possession from the vendor, and a transference into the vendee.   This necessarily excludes the idea of a joint or concurrent possession.   It may not be essential or indispensable that the goods should be moved into a new or different house, but there must be some open, notorious, or visible act, clearly and unequivocally indicative of delivery and possession, such as taking an invoice, putting up a new sign, or any other reasonable means which would impart notice to a prudent man that a change had taken place; and, under the statute, the change must not be merely formal and temporary.   But where the whole law has been complied with, there is nothing to prevent the employment of the vendor to render services in and about the property in the same manner as any other agent or employee.

## *Appeal from St. Louis Circuit Court.*

This suit was commenced by attachment levied on a stock of boots and shoes in a store occupied by Samuel Rosenberg, defendant, near the corner of Seventh street and Franklin avenue, in the city of St. Louis, on the 22d of January, 1867.   Simon Strauss, interpleader, claimed the goods by virtue of a bill of sale made on the 18th of December, 1866.   Upon the trial of the interplea the testimony for Strauss showed that he was a milliner, doing business on Fourth street, in St. Louis; that he was brother-in-law of defendant; that he had loaned him considerable

sums of money, and paid certain bills on his account; that, in consideration of these debts, defendant gave him a bill of sale of his stock of goods, had the deed recorded, and turned over the store to interpleader, who, on the evening of the transfer, made an arrangement with defendant by which he employed him as his clerk, at a salary of $70 per month, to sell the stock, receive the proceeds, and turn over to interpleader any balance which might remain after paying his own wages and expenses of the store, including the rent, which he was to pay to the landlord on behalf of interpleader. The testimony showed that, in pursuance of this arrangement, defendant continued to take charge and control of the store as before the date of the sale, except on one occasion, for two days, when, being sick, his brother, who was clerk of interpleader, supplied his place; and on other occasions, for an hour or so, when he was called away by business, and notified interpleader, whose clerk took his place in the meantime. Interpleader was at the store nearly every day, for an hour or so, before and after the sale, but more frequently afterward. He made his visits after the sale to look after the business; was there generally in the evening; never himself sold any goods, or interfered with defendant while selling them. This summary embraces substantially all the proof.

At the close of the testimony counsel for plaintiff asked the following among other instructions, which the court refused to give:

1. The jury are instructed that, upon the evidence, Simon Strauss, the interpleader, cannot recover.

2. To entitle the interpleader, Simon Strauss, to recover in this case, he must satisfy the jury by the evidence that the goods in question were sold and delivered to him; that he took possession of the same after the purchase; that he had exclusive possession as against said defendant, Rosenberg, and that the change of possession must have been an actual and visible change — such a change as to indicate to persons who had previously done business at the store of Rosenberg, aforesaid, that he no longer had possession of or controlled the goods attached.

3. Unless the jury are satisfied from the evidence that Simon

Strauss had actual possession of the goods in question; that the change of possession was visible, continued, and exclusive, as against defendant, Rosenberg — such a change of possession as to indicate to purchasers at large that said defendant was no longer in control of said goods — they are instructed by the court that, as against creditors, the said sale is fraudulent and void, even although they believe from the evidence that said sale from defendant to said Strauss was in good faith and for a valuable consideration.

*T. A. & H. M. Post*, and *Samuel Knox*, for appellants.

I. The first instruction refused plaintiff by the court was based upon the tenth section of the statute concerning fraudulent conveyances (Gen. Stat. 1865, p. 440), and amounted to a declaration of law, that interpleader, by his testimony, failed to show an actual and continued change of possession of the goods in dispute after sale. Under the statute, in its present amended shape, the old question of intent is eliminated. There being no case showing change of possession, the transaction is fraud in law, however honest in intent.

In the case at bar the facts were few and plain, all developed by one party on his own behalf, and undisputed. The question, and the only question, was a bald, simple issue of law. Where the testimony as to given facts is diverse and conflicting, the case goes to the jury. But where the facts are clear and uncontradicted, the issue is for the court, however varied and complex such facts may be in their legal bearing. One undisputed fact may show possession in the vendor; another fact, equally unquestioned, may, when taken alone, show possession in the vendee. The testimony, nevertheless, like an agreed case, is one for the court. What the facts are must be settled by the jury. What the facts, when determined, amount to in the eye of the law, must be determined by the court. (Vance v. Boynton, 8 Cal. 554; Mylne v. Henry, 40 Penn. St. 352; 5 Watts, 483; 9 Johns. 342; 5 Serg. & R. 275; 10 *id*. 84.) The case of Stephenson v. Clark, 20 Verm. 624, which seems to make most strongly against this proposition, is expressly qualified by the same judge (Redfield) in

the subsequent decision of Burrows v. Stebbins, 26 Verm. 659, which sustains in full the position of plaintiff.

The facts in evidence clearly failed to show that change of possession required by the statute. The language of the law is in itself plain, and its meaning is settled beyond dispute by a current of legal decisions, from the time of Elizabeth. As between the parties, constructive, fictitious, or symbolical delivery may be sufficient. As to outside creditors, fictions and badges of title are unavailing. There must be "a change of dominion and control over the property." (Harvey v. St. Louis Butchers, 39 Mo. 217.) "The principle which underlies all the cases is, that there must be an actual separation of the property from the former owner at the time of the sale, or within a reasonable time afterward, according to the nature of the property delivered." (Barr v. Reitz, 53 Penn. St. 258.) It is contended that when the vendor is acting as clerk of the vendee, the possession of the agent is the possession of the principal under whom he holds. But here the contest arises between vendor and vendee. Under the statute the one must hold as against, and not under, the other. Can it be maintained that while the vendor continues to exercise the charge, custody, and control, nevertheless the possession has passed out of him into the vendee? The only case in which symbolical or constructive change of possession will satisfy the statute is in cases where the property is inaccessible or immovable, or too ponderous or bulky to be transported. *Lex non coget ad impossibilia.* "An actual change of possession, so far as the thing sold is susceptible of it, is absolutely necessary to the validity of the sale, as to creditors and subsequent purchasers." (Walter v. Cralle, 8 B. Monroe, 11, 12; Chase v. Ralston, 30 Penn. St. 541; Story on Sales, §§ 304, 392; 2 Kent's Com. § 500; 29 Cal. 472–3; 8 Cal. 80, 554; 20 Cal. 323; 15 Cal. 503.) That the statute contemplates, as far as possible, a transfer of the goods, is evident from its language. There must be a delivery, "regard being had for the situation of the property." If it be inaccessible or immovable, of course there can be no transfer.

In this view of the law, what proof did the case show of actual

change of possession? No case ever was tried where absolute, unchanging continuity of possession could be established. The line of distinction must be drawn somewhere; and certain facts being given beyond dispute, the court is bound to face them squarely, and say whether they constitute a *bona fide* change of possession, or only unimportant and frivolous exceptional circumstances not affecting the fact.

2. The statute requires that the change of possession shall be continuous. (9 Cal. 271; 15 Cal. 506; 29 Cal. 472.) Interpleader's clerk took defendant's place, at the longest time, for two days. Was such a change in the eye of the statute continuous?

3. The change of possession must be open and notorious, so as to show the world at large that the property had changed hands. (19 Cal. 329; 15 Cal. 506; 10 N. H. 240; 8 Verm. 356.) Was there any evidence tending to show such notice to the world at large of the claims of the new owner?

It was the broad design of the statute, from political considerations, to separate the possession of the property from the vendor after sale absolutely, and regardless of ownership or notice of the ownership. It cuts deeper than fraud in fact and intent. It strikes a blow at the root of fraud by preventing the temptation to commit it. (5 Serg. & R. 281; 8 Cal. 83; 1 Smith's Lead. Cas. 48; 9 Johns. 343.)

The fact that plaintiff was notified of the transfer of the goods will not avail interpleader. An actual and continuous change of possession implying acts of general notoriety and publicity, such as to give knowledge to the community at large of the change of title, and, where the property is capable of it, an entire change of control, must follow the bill of sale in order to render it valid, just as much as a record thereof must accompany a chattel mortgage in order to make it good against purchasers. In the latter case personal notice of an unrecorded mortgage avails nothing. (Bryson v. Hardin, 18 Mo. 15.) Neither does notice to a creditor of change of possession, where there is no actual and continued change of possession, avail anything to render valid the bill of sale of goods. (Walter v. Crouch, 8 B. Monroe, 12; Roberts

on Fraud. Cont. 16 ; Cowper, 711–12 ; Mason v. Baker, 1 A. K. Marsh. § 210 ; 40 Penn. St. 352.)

II. The second and third instructions should have been given. They declare that the possession of the vendee as against the vendor must be exclusive. These instructions strike directly at the case at bar, upon the theory of the facts set up by counsel for interpleader. Upon that theory both vendor and vendee were in possession after the sale—the vendor, as agent ; the vendee, by virtue of ownership and occasional visits. This joint possession, the instructions refused declare, avoids the sale. That this instruction contains good law is clear from the authorities. (Chit. on Cont. 414 ; 1 Campb. 333–4 ; 7 Taunt. 149 ; 24 Texas, 624 ; 8 id. 33 ; 10 Serg. & R. 419 ; 17 Verm. 271 ; 3 id. 442 ; 19 id. 609 ; 16 id. 435 ; 29 Cal. 466.) The case of Godchaux v. Milford, 26 Cal. 316, is much relied upon by respondent, particularly the action of the court in overruling the following instruction : "If the jury find upon the evidence that Kraft was hired by the plaintiff, and remained in possession of the goods he (Kraft) had sold to him, as such hired man, the sale was void by the statute of frauds," etc. This instruction was overruled on this ground : In the language of the court, "it makes the bare employment of the vendor by the vendee in a subordinate capacity, regardless of the fact whether such subordinate capacity is open and notorious or not, the ultimate fact by which the statute determines the question of fraud." (Id. 325.) "If it be apparent to all the world" * * "that he, Kraft, had ceased to be the principal in charge and management of the concern, and became only a subordinate or clerk, the reason of the rule announced by the statute is satisfied." (Id. 325.) The instruction upon which that case hinged is totally different from the one now before the court. In the former case the vendee might have exclusive possession by reason of being in charge and custody of the property, and yet employ the vendor as clerk in a subordinate capacity. To quote the language of this case : "A hired clerk or salesman is no more in possession of the goods of his employer than a hired laborer is in possession of the farm on which he is employed to work." (Id. 325.) And why?

Because, notwithstanding his employment, it " may be apparent to the world that he has ceased to be principal in charge." All that the instruction refused demands is that the vendee, as against the vendor, shall have exclusive possession. If the vendor not only continues to take charge of the goods as clerk of the vendee, but to perform all the acts of ownership, who will conclude that the vendee has exclusive possession? As explaining the cases cited, *vide* Wood v. Bugby, 29 Cal. 466.

*Stewart & Wieting*, for respondents.

I. Plaintiffs admit the *bona fides* of the transaction, and charge no fraud in fact, but simply a technical fraud in law. The policy of the statute is to guard and protect the public against sales which are fraudulent in fact. (Hall v. Parsons, 15 Verm. 364.)

II. The instruction offered by plaintiffs at the close of interpleader's case was properly refused by the court :

1. There was testimony offered by interpleader tending to show an actual and continued change of possession of the property after the sale, which the court could not take from the consideration of the jury. (Chambers v. McGiveron, 33 Mo. 201 ; McKown v. Craig, 39 Mo. 156.)

2. What is a sufficient change of possession of property to protect it from attachment by the creditors of the vendor is always a matter of fact for the jury, where there is any testimony tending to show such change of possession. (Hall v. Parsons, 15 Verm. 364, 17 Verm. 277 ; Stephenson v. Clark, 20 Verm. 624–7.)

3. Although our statute makes the want of an actual and continued change of possession within a reasonable time after a sale conclusive evidence of fraud, it introduces no new rule touching what shall constitute such a change of possession. (Godchaux v. Milford, 26 Cal. 316.)

III. Instructions 2 and 3, offered by plaintiffs, could not have been given. The only proposition of law they contain, not found in the instructions already given for plaintiffs, is not sound. These instructions declare the law to be that interpleader's possession must have been exclusive as to Rosenberg, or the sale was fraudulent and void. The statute only requires actual and con-

tinued possession. (Gen. Stat. 1865, p. 440, § 10.) This law was enacted by the legislature after the long series of decisions from Twynne's case, in 2 Coke, 80, down, involving every possible phase which the case could assume, especially the questions of actual and continued change and joint or concurrent possession, and adopts the strict rule established by the courts of some of the States requiring an actual and continued change of possession, but goes no further, leaving the question of joint or concurrent possession precisely as it was before the law was made — only a badge of fraud to be explained. (Chit. on Cont. 5 Am. ed. 412a–414; 24 Texas, 624; 26 Cal. 325; Stanley v. Robbins, 36 Verm. 423–5; Latimer v. Botson, 4 Barn. & Cres. 652; Martindale v. Booth, 3 Barn. & Ald. 498; Leonard v. Baker, 1 Mawle & Sel. 251.) Had the law-makers intended this to be an essential ingredient of a sale of personalty, the use of one word would have clearly and unequivocally expressed their meaning, and they could scarcely have omitted it when this law was under revision — *expressio unius est exclusio alterius*.

IV. Assuming, however, for the sake of argument, that the law is to be thus tortiously interpreted to mean what it does not say directly or by implication, still these instructions must have been refused. They ask the jury to find a conclusion of law, and not the facts constituting it. What is exclusive possession is purely a conclusion of law to be declared by the court; but what facts tending to show such possession are established by the evidence, the jury must decide. (Allen v. Edgerton, 3 Verm. 442–4; Farnsworth v. Shephard, 6 Verm. 621; Lyndon v. Belden, 14 Verm. 423; Hall v. Parsons, 17 Verm. 277.) Again, there was absolutely no testimony tending to show a joint or concurrent possession of vendor and vendee in this case. The fact that the vendor is employed by the vendee after the sale, to sell the goods, will not disturb the rights of the purchaser. "The hired clerk or salesman is no more in the possession of the goods of his employer than the hired laborer is in possession of the farm on which he is employed at work." (Stevens v. Irwin 15 Cal. 506, overruling 4 Cal. 128, 8 Cal. 80, 9 Cal. 972; Godchaux v. Milford, 26 Cal. 316; Ford v. Chambers, 28 Cal. 13; Brown v. Riley, 22

Ill. 45; Warner v. Carlton, 22 Ill. 424; Neece v. Haley, 23 Ill. 416; Hall v. Wheeler, 13 Ind. 371–2; Wilson v. Hooper, 12 Verm. 653; Stephenson v. Clark, 20 Verm. 624–7; Stanley v. Robbins, 36 Verm. 423.) To constitute joint or concurrent possession it must be of the same description as that of a joint owner in using, occupying, and disposing of the property. (Allen v. Edgerton, 3 Verm. 442; Hall v. Parsons, 15 Verm. 358, 17 Verm. 277.)

V. Plaintiffs had actual notice of this sale, which they admit to have been for a valuable consideration, and of vendee's possession, and they are deceived or mislead by nothing save their own judgment — an error this court will not remedy. They are bound to see what others can see, and judge and act upon it with that prudence required of men in business affairs. (Stephenson v. Clark, 20 Verm. 624–7; Stanley v. Robbins, 36 Verm. 423.)

VI. The instructions given for plaintiffs put the question of change of possession fully and fairly before the jury, and unequivocally declare the law to be as laid down in the statutes; and the instructions given for both plaintiffs and interpleader, as a whole, contain a correct exposition of the law of the case, and present it clearly and explicitly to the jury.

VII. This court will not review the judgment of a court below refusing a new trial on the ground that the evidence does not support the verdict. Some part of the testimony was conflicting, and it is impossible for this court to say what the jury should believe. There is always testimony elicited during the course of a trial which has weight with a jury that a bill of exceptions cannot faithfully preserve. (State v. Anderson, 19 Mo. 241; Blumenthal v. Torini, 40 Mo. 159–60; Weber v. Degenhardt, 34 Mo. 458.)

WAGNER, Judge, delivered the opinion of the court.

This case was well argued, and the question is important, as it requires a definite construction of the tenth section of the act concerning fraudulent conveyances. (Gen. Stat. chap. 107, p. 440.) The subject of sales of goods and chattels without delivery has given rise to more protracted discussion and more contradictory

decisions than any other matter in the whole range of the law. The construction given to the English statute of frauds in an early day was that the retention of personal property by the vendor, after sale amounted to fraud *per se;* that it was conclusive, and could not be rebutted by proofs of honesty and fairness in the transaction. The leading cases supporting this rigid and stringent rule are Twynne's case (2 Coke, 80) and Edwards v. Harbin (2 T. R. 587) in England, and they were followed and received the sanction of the United States Supreme Court in Hamilton v. Russell (1 Cranch, 97), and many of the States have adopted the same doctrine. In other States a more liberal view has been taken, and it is held that the retaining of the property after sale is only evidence of fraud, susceptible of being explained, and should be passed upon as a question of fact by the jury. In the early history of this State, the court adhered to the law as settled in Twynne's case and adopted in the national tribunal. (Rocheblave v. Potter, 1 Mo. 561; Foster v. Wallace, 2 Mo. 231; Sibley v. Hood, 3 Mo. 290; King v. Bailey, 6 Mo. 576.) But the cases holding this view of the law were all shaken or overruled in Shepherd v. Trigg (7 Mo. 151), where, for the first time, it was adjudged that in all cases the purchaser might show why he left the vendor in possession of the property, and that such possession was in good faith. In this conflict of judicial opinion the legislature interposed, and settled the law by statutory enactment, as declared in Shepherd v. Trigg. Several decisions were rendered by this court giving the statute an interpretation and legal exposition, and it was supposed that the vexed question was conclusively settled and put at rest, till the revisers, in 1865, inserted the tenth section, which unsettled the law, as it had existed for more than twenty years, and practically restored the ancient rule.

The objections complained of by the appellants consist in the refusal of the court to give certain instructions prayed for. The first instruction was, we think, rightfully refused. It declared that, upon the evidence, the interpleader could not recover. It is unnecessary to repeat that such an instruction is only justified or warranted where there is a total and complete failure of evidence to uphold a verdict; but where there is any evidence tending to

prove the issue, it must be submitted to the jury.    There was
some evidence in the present case, and the court very properly
refused to withdraw it from the consideration of the jury.

The last instruction asked was bad, because there was no
evidence to sustain it.    The third and fourth instructions, how-
ever, are the ones principally relied on, and they may conveniently
be considered together, as they contain substantially the same
proposition.    They assert, in effect, that the jury must be satisfied
from the evidence that the interpleader took actual possession of
the goods in question, that the change of possession was visible
and continuous and exclusive as against Rosenberg, his vendor,
and such as to indicate to purchasers at large that Rosenberg no
longer had possession or control of the goods, else they should
find for the appellants.    The statute declares that "every sale
made by a vendor of goods and chattels in his possession or under
his control, unless the same be accompanied by delivery in a
reasonable time (regard being had to the situation of the prop-
erty), and be followed by actual and continued change of the
possession of the things sold, shall be held to be fraudulent and
void as against the creditors of the vendor or subsequent pur-
chasers in good faith."

The main objection urged against the instructions is that they
require the possession to be exclusively in the vendee, as against
the vendor, and the court seems to have refused them principally
upon that ground.

In Wardall v. Smith (1 Campb. 333), Lord Ellenborough, in
speaking on this subject, said:    "To defeat the execution there
must have been a *bona fide* substantial change of possession.    It
is mere mockery to put another person in to take possession
jointly with the former owner of the goods.    A concurrent pos-
session with the assignor is colorable; there must be an exclusive
possession under the assignment, or it is fraudulent and void as
against creditors."    Although the statute does not use the word
*exclusive*, it necessarily implies it, and it is obviously essential to
carry out its plain intention.

The vendee must take the actual possession, and the possession
must be open, notorious, and unequivocal, such as to apprise the

community or those who are accustomed to deal with the party that the goods have changed hands, and that the title has passed out of the seller and into the purchaser. This must be determined by the vendee using the usual marks and *indicia* of ownership, and occupying that relation to the thing sold which owners of property generally sustain to their own property.

There must be a complete change of the dominion and control over the property, and some act which will operate as a divestiture of title and possession from the vendor, and a transference into the vendee. This necessarily excludes the idea of a joint or concurrent possession. It may not be essential or indispensable that the goods should be moved into a new or different house, but there must be some open, notorious, or visible act, clearly and unequivocally indicative of delivery and possession, such as taking an invoice, putting up a new sign, or any other reasonable means which would impart notice to a prudent man that a change had taken place. The statute provides that the change shall be actual and continued; it must, therefore, be neither formal nor temporary; but where the whole law has been complied with, we see nothing to prevent the employment of the vendor to render services in and about the property, in the same manner as any other agent or employee.

The instructions placed the law correctly before the jury, and should have been given; and, for the refusal to give the same, the judgment will be reversed and the cause remanded. The other judges concur.