M. E. POLLARD, Respondent, v. S. FARWELL *et al.*, Appellants.

Kansas City Court of Appeals, February 8, 1892.

Fraudulent Conveyances: CHANGE OF POSSESSION. On the agreed statement of facts in this case, it is *held*, there was a sufficiently open, notorious and unequivocal change of possession, even though the vendor remained in charge of the property, a stock of goods, and the sign painted on the house was not changed.

*Appeal from the Cedar Circuit Court.*—HON. D. P. STRATTON, Judge.

AFFIRMED.

"IT is hereby agreed that the issues joined upon the interplea of M. E. Pollard, in each of the above entitled causes pending in the circuit court of Cedar county, Missouri, shall be determined on the following statement of facts, which are admitted to be true: That the interpleader, M. E. Pollard, received from the estate of her father certain money, of which on September 1, 1883, she loaned the defendant, J. T. Wood, $1,301, for which she took his note of that date, payable one day thereafter, with eight-per-cent. compound interest; that on January 1, 1886, said note was taken up and in lieu thereof Wood executed to her a new note for $1,513, payable one day after date with six-per-cent. compound interest. On January 1, 1888, there was paid and indorsed on said last-mentioned note the

sum of $31.85, and on November 1, 1888, she loaned said
Wood the further sum of $400, for which he executed
his note payable one day after date, with six-per-cent.
compound interest; that on March 5, 1889, for and in
consideration of the surrender of the said notes, the
said Wood made and delivered to her a bill of sale of
the property in dispute.  Said bill of sale is in due
form and expresses a consideration of $2,172.75, and was
signed by Wood and attested by J. W. Roby and
N. H. Cruce, as witnesses, and was acknowledged before
J. W. Roby, a justice of the peace of Cedar county,
and was filed for record and recorded on page 59, of
book A, records of Cedar county, in recorder of deeds'
office at Stockton, Cedar county, Missouri, March 22,
1889.  Said property consisted of a stock of goods,
wares, and general merchandise and store fixtures,
scheduled at cost and carriage at the sum of $2,632.84.
Prior to the execution of the said bill of sale the said
Wood was carrying on at Eldorado Springs the busi-
ness of a merchant, and had been for some time.  The
property included in the bill of sale was the entire
stock of goods, wares, merchandise and fixtures on
hand, and were worth not to exceed the sum paid for
them by Miss Pollard.  The interpleader made a con-
tract with Wood that he was to carry on the business
for her as her manager, and as a compensation he was
to receive one-half of the net profits.  During the nego-
tiation and pending the preparations of and signing
the bill of sale, the storeroom was closed.  Immediately
following the delivery of the bill of sale the storeroom
was opened and the business of selling merchandise was
begun by Wood as manager for interpleader.  Wood
employed no clerk before the sale to Miss Pollard, and
after the sale to her he was the only salesman in the
store carrying the keys to the storeroom.  Soon after
the sale to her, Wood, as her manager, at her request,
wrote to Wm. Cassidy, at Kansas City, Missouri, to
employ him as a salesman for her in said store, and

Cassidy came down to Eldorado Springs to act as clerk for her in said store, but did not arrive there until after the levy of the writ of attachment on March 29, 1889. The interpleader is a young woman, aged about twenty-four, and was not in the storeroom engaged in selling goods. She was frequently in and out, but the management and supervision of the business was in Wood. As soon as sale was made to interpleader, Wood, as her manager, notified the Bradstreet Mercantile Agency of the sale and of the arrangement between interpleader and himself. Wood also at once wrote to his creditors, including the plaintiffs herein, who received his letters before they commenced their suits against Wood, notifying them of the sale to Miss Pollard and of his employment to carry on the business for her as her manager. Wood also at once got letter heads, showing that Miss Pollard was owner of the store and he was her manager. · An account was opened in the name of M. E. Pollard with the Cruce Banking Company of Eldorado Springs, and against it Wood drew checks as her manager. Advertisements were published in the two weekly newspapers of Eldorado Springs that goods, wares and merchandise had been received by J. T. Wood as manager for M. E. Pollard. The fact that Wood had made a bill of sale of his stock of goods, wares and merchandise to M. E. Pollard, and that she had employed him to manage the business for her, was generally known and talked of among the people of Eldorado Springs. That after the said sale to the interpleader, Wood, as manager for M. E. Pollard, ordered three bills of goods in his name as manager for M. E. Pollard, two of which, one from I. & S. Berry for $236.25, and one from J. Holmes for $———, were received before the levy ; the other came afterward and was returned. The storeroom was the ground floor of a two-story building in Eldorado Springs. Wood had a lease from June 15, 1887, to June 15, 1892. Rent to

be paid monthly in advance; that is, $20 per month for the storeroom and $15 per month for the upstairs, which Wood's family occupied as a residence. Wood did not assign the lease to Miss Pollard. She desired to change the location of the storeroom and negotiations for the lease of another storeroom were pending on the part of Miss Pollard, through Wood, as her manager, at the time of the levy of the writ of attachment. Wood was also negotiating with the owner of the building in which the store was for a release or surrender, for the reason that his family wished to get out of an upstairs residence. The name of J. T. Wood appeared in the front of the store in three places, being painted on the building, and was not changed after the sale.

The writ of attachment in S. Farwell & Co. v. Wood was levied March 29, 1889, and in the Strauss, Goodman and Zansdorff case on April 5, 1889. The amount sued for in the Farwell case was $456.87, and in the Strauss, Goodman et al. case it was $1,257.50. The interpleader was a stepdaughter of said Wood, and resided with him as a member of his family, and had done so for some years. The said Wood had been buying goods from the plaintiffs as wholesale merchants every year from the year 1885, until the bills of goods upon which these suits were founded were purchased, and prior to each purchase he made verbal and, also, made and signed written statements to plaintiff and their agents, in all of which he claimed and set forth that he was not indebted to any person whatsoever upon any promissory note or notes, and that he did not owe any debt or debts except to wholesale merchants for goods purchased of them, and in no case did he ever show an aggregate indebtedness exceeding $2,500, nor did he ever either directly or indirectly mention to either plaintiffs or salesmen that he was in any manner indebted to the interpleader. The interpleader had no knowledge of the said statement of Wood."

*R. F. Buller*, for appellants.

In order to constitute a valid sale of goods and chattels by a vendor in possession it must be followed by delivery within a reasonable time and an actual and continued change of possession of the things sold.   R. S., sec. 5178.   And this change of possession must be open, notorious and unequivocal, such as to apprise the community that the goods have changed hands ; and if the purchaser of a stock of goods permits them to remain at the vendor's place of business without removing his business sign, the change of possession is not unequivocal within the statutes, notwithstanding that he may have done many other things in the way of giving notice of the alleged sale.   *Wright v. McCormick*, 67 Mo. 426 ;  *Stewart v. Bergstrom*, 79 Mo.  724 ; *State ex rel. v. Bennett*, 70 Mo. 275.   And when it appears from the undisputed facts that there is no such unequivocal change of possession the courts should, as a matter of law, declare the sale fraudulent.   79 Mo. 525, *supra ;* Bump. Fraud. Conv. [ 2 Ed. ] pp. 112, 113, 114 ; *Burgert v. Borchert*, 59 Mo. 80 ; *Claflin v. Rosenberg*, 42 Mo. 439 ;  *Bishop v. O' Connell*, 56 Mo. 158.   It is manifest that the pretended sale of the stock of goods to interpleader was fraudulent in fact,  as well as  in law, and  that she participated in the fraud, in which case even though she paid value and got possession her purchase would be invalid.   *Stone v. Spencer*, 77 Mo. 367. The bill of sale did not help the matter even though it was recorded.   *State v. Bell*, 2 Mo. App. 102.

*Burton & Wight* and *R. N. Banister*, for respondent.

( 1 )  There is nothing in the record that even suggests any fraud on the part of the interpleader. ( 2 )  There was a change in the possession, such as was

required by the law. R. S. 1889, sec. 5178 ; *Claflin v. Rosenberg*, 42 Mo. 439 ; *Wright v. McCormick*, 67 Mo. 426 ; *State ex rel. v. Merritt*, 70 Mo. 275 ; *State to use v. Donnelly*, 9 Mo. App. 527–8 ; *Kane v. Stern*, 13 Mo. App. 581 ; *Knoop ex rel. v. Distilling Co.*, 26 Mo. App. 310–12 ; *Leeser v. Boekhoff*, 33 Mo. App. 233 ; *Huels v. Boettger*, 40 Mo. App. 310–15. ( 3 ) If the acts of a purchaser of a stock of merchandise, in taking and keeping possession of the property sold, are open, notorious and visible, and such as to clearly and unequivocally indicate a complete delivery, his failure to take all the means having a tendency to impart notice of the sale will not invalidate the sale as to creditors of the vendor. *Huels v. Boettger, supra; Leeser v. Boekhoff*, 33 Mo. App. 233. ( 4 ) The employ- ment of Wood as manager was not inconsistent with an actual, visible and notorious change of possession. *Kane v. Stern, supra; State to use v. Donnelly, supra; Knoop ex rel. v. Distilling Co., supra.*

ELLISON, J.—The only question in this case is whether there was such a change of possession of the stock of merchandise as is contemplated by section 5178, Revised Statutes, 1889. We are of the opinion that there was. We are bound to so hold unless we are ready to announce that there can be no change of possession where the vendor is left in charge of the property. That there was a change of possession as between the parties, cannot be disputed. But to make the change sufficient under the statute, as against cred- itors the change must be open, notorious and unequiv- ocal. The things which the parties did in this case were those which in themselves would tend to make the transaction notorious and unequivocal. They were means well adapted to that end, and the case concedes that it was notorious. The chief matters relied upon by plaintiff are that, though the store was closed during the negotiations of sale between the interpleader and her

vendor, yet, when it was opened, the vendor remained in the store as a salesman, and that the sign painted on the house was not changed. The law having been otherwise complied with, these matters ought not to avoid the sale especially as the fact was that interpleader was negotiating for a clerk and had one engaged at the time the attachment was levied, and it further appearing that she was also negotiating for a different store-room in which to remove the stock. We have not deemed it necessary to cite authorities supporting our conclusion since the principle governing such cases has been well understood since the case of *Claflin v. Rosenberg*, 42 Mo. 439.

The judgment is affirmed. All concur.