SHARPLESS BROS., Appellants, v. PHIL. A. DERR, Defendant; EDWARD DERR, Interpleader, Respondent.

Kansas City Court of Appeals, May 6, 1895.

Fraudulent Conveyances: SALES: CHANGE OF POSSESSION: EVIDENCE. The evidence in this case is considered and *held* to indicate a sufficient change of possession, although no invoice was taken, no change of sign was had, and the vendor remained in charge as manager of the vendee; and the verdict is sustained, the instructions being without prejudice to the plaintiff.

*Appeal from the Nodaway Circuit Court.*—HON. CYRUS A. ANTHONY, Judge.

AFFIRMED.

*I. K. Alderman* and *E. A. Vinsonhaler* for appellant.

(1) Nor can this void sale be galvanized into life by the volubility of the clerks. The customers, the

landlord, the insurance agent and the bank officials may have been informed, and a news item published in the papers, yet this is but notice of a sale perfectly good between Phil. and Ed. but wholly bad as to Phil's creditors. Knowledge of the creditor himself of the sale has no bearing upon the issue and is inadmissible in evidence. "He simply knows of a sale that is void as to him." *Perrin v. Reed*, 35 Vt. 2; *Bassinger v. Spangler*, 10 Pac. Rep. 809–813; *Harkness v. Smith*, 28 Pac. Rep. 423. The case last cited "is on all fours" with the case at bar. 9 Colo. 175; 2 Idaho, 951. The requirement is that the change of possession must be continuous. Here, it is the sale only that is published. There is a vast difference between the notoriety of change of possession and notoriety of the sale. Our statutes since 1865 makes the retention of possession by the vendor conclusive evidence of fraud, regardless of the *bona fides* of the transaction. *Claflin v. Rosenberg*, 42 Mo. 439, and the decisions cited in Pacific Reporter are under like statutes. *Wright v. McCormick*, 67 Mo. 426; *Stewart v. Bergstrom*, 79 Mo. 524; *State ex rel. v. Hall*, 45 Mo. App. 298; *Kuykendall v. McDonald*, 15 Mo. 416; *State to use v. Bell*, 2 Mo. App. 102; *Bassinger v. Spangler*, supra.

*S. R. Beech* for respondent.

(1) First, then, as to change of possession. Our statute will not presume a sale to be fraudulent and void, if the vendee takes sufficiently open, notorious, and continuous possession, "to apprise the community, or those who are accustomed to deal with the vendor, that the goods have changed hands, and that the title has passed out of the seller into the purchaser." The presumption of the statute, is overcome by evidence of such facts as show the above requirement. The taking

of an invoice, changing of signs, etc., are some of the things that may be shown to overcome it, but not the only, nor indispensable ones. There are many other things that will do as well. *Lesem et al. v. Herriford et al.*, 44 Mo. 323; *Prentiss v. Schirmer*, 32 Am. St. Rep., at top p. 740; *Shoe Co. v. Rudy*, 53 Mo. App. 198, to end of case; *Huels v. Boettger*, 40 Mo. App. at p. 315; *State ex rel. v. Flynn*, 56 Mo. App. p. 239, to end of case; Recording Bill of Sale, R. S. 1889, secs. 7430–7432.

ELLISON, J.—The plaintiff attached a stock of merchandise as the property of Phil. Derr. Ed. Derr, a brother of Phil.'s, filed an interplea, claiming the goods as his property. A trial resulted in favor of the interpleader, and plaintiff has brought the case here.

The interpleader was, among numerous others, a creditor of Phil. Derr. The latter, finding himself pressed by his debts, sold the goods in controversy to the interpleader, in consideration of interpleader canceling his own claim of several thousand dollars, and assuming the payment of some debts to some of the other creditors. The validity of this sale, as to creditors, is the principal question between the parties. Its validity is attacked principally on the ground that there was not such a change of possession as is contemplated by section 5178, Revised Statutes, 1889.

The evidence on this head was, in substance, that, when Phil. Derr informed interpleader, who resided in the state of Iowa, of his approaching failure in business, interpleader came down to Maryville and talked the matter over with defendant, returning to Iowa on the same day. He returned again a day or two later and bought the goods for the consideration above stated. He and Phil, agreed upon the purchase, though without a definite understanding as to the amount which

was to be paid for the stock. By an understanding between them, Phil. went to the office of Mr. Beech, his attorney, and had a bill of sale drawn up, stating the consideration at $16,500. The interpleader remained at the store and looked over an invoice which had been taken of the stock a few months previous, and the books. He then went to the attorney's office, and, finding the consideration stated in the bill of sale at the sum last aforesaid, refused to allow that much for the stock. The sum of $14,500 was finally agreed upon, but as the other sum was already written in the bill of sale, they were advised it would make no material difference, as the consideration was a matter which could be explained, and it was thus left as originally written. Phil. then delivered to interpleader, at the attorney's office, the key to the store, Phil. returning to the store, and his brother, the interpleader, taking the bill of sale to the recorder's office, where he had it recorded. When Phil. got back to the store, he informed the several clerks that he had sold out to his brother Ed., the interpleader. The interpleader himself shortly returned to the store, where, and when, he informed the clerks of his purchase and engaged them to continue as clerks in his employment, and also employed his brother Phil. as manager, at a compensation of $100 per month. Interpleader then remained in the store during that day, when he returned to Iowa. But while there that day, he waited on customers, took charge of the cash drawer, wrote letters to other creditors, informing them of his purchase, had a notice published in the several papers of the town (one daily and two weeklies), announcing his purchase, and he and all others in the store announced to all patrons coming in, the change of ownership. In addition to this, insurance policies and bank account were changed to interpleader's name. About ten days after this the attachment was taken out. Interpleader

having been down once in the meantime. He came, on being notified of the issuance of the attachment, and was present when it was formally levied.

It will be noticed that there was no closing the store for the purpose of invoice, and that no sign was put up which would signify a change of possession. As to the latter, the explanation is offered that the sign already on the store was "Derr's Dry Goods Store," and, as that applied to interpleader, as well as to Phil. Derr, it remained unchanged. It must be admitted that the question of change of possession could have been much more satisfactorily resolved in favor of such a change, if there had been a change of sign, and if Phil. Derr had not been retained in the management of the store. Why parties will take such risk of appearances in sales of this character, is hard to understand, but so it is here, and we must pass on the case as we find it. Assuming the instructions to have been proper, can we say, as a matter of law, that the evidence failed to show such an actual and continued change of possession as is contemplated by the statute. We are of the opinion that we ought not to say that. A change of sign and an invoice are the usual indications of a change of ownership and possession of a stock of goods. But these usual, ready and proper modes of such a change are necessarily not the only modes in which it can be accomplished. The law has not prescribed any set formula whereby a change of possession is accomplished. Suppose proclamation of sale and change of possession was constantly made at the store door; or that hand bills had been posted in the windows, would not that have been quite as effective as a change of sign, in cases where the old sign applied to the new owner? It must be borne in mind that there was, in this case, a change of possession in fact. For it could not well be said that the things done by these parties

did not give interpleader possession, as that term is ordinarily understood in law. And the question considered here is whether the evidence here justifies a verdict that such possession was the open, notorious and continued possession, which is required by the statute aforesaid, as it had been interpreted by the courts. We think it does; that is to say, we think it sufficient to cause us to refrain from interfering with the verdict.

The instructions of the court, as a whole, are unexceptionable when applied to the evidence in the case. Those for interpleader may be subject to some criticism, when considered apart from those given in plaintiff's behalf. But considered with the latter, the jury could not have been misled. If interpleader's attorney made an improper argument to the jury, based on a disconnected instruction, he should have been corrected at the time. The instructions for plaintiff included a direction that the recording of the bill of sale was not a change of possession. It was even stronger than that. Further instructions informed the jury that, though the sale was notorious, yet, before they could find for interpleader, they must believe his possession was actual, and that he remained in the open, notorious and exclusive possession thereof. All that was proper in the refused instruction offered for plaintiff was included in those given. By instruction number 6, given for plaintiff, the jury were told that the presumption was that the consideration stated in the bill of sale represented the true value of the stock, and, if it was not, the burden was on the interpleader to show it.

We do not think the remark of the court on ruling on the admission of testimony could have been understood to the prejudice of plaintiff.

We have not entered into a discussion of the authorities, to be found in the briefs of the respective

counsel, for the reason that we deem the evidence in the record sufficient, as we have before stated, to authorize the verdict, under the decisions of the appellate courts of the state, since that of *Claflin v. Rosenberg*, 42 Mo. 439. The judgment will be affirmed. All concur.