Straus v. Rothan.

JACOB STRAUS, Appellant, v. ISAAC ROTHAN *et al.*, Defendants; HENRY F. HARRINGTON, Respondent.

St. Louis Court of Appeals, May 22, 1890.

Executions: ATTACHMENT FOR UNPAID PURCHASE MONEY. The statute (Revised Statutes, 1879, sec. 2353), which provides that personal property shall be subject to execution on a judgment against the purchaser for the purchase price thereof, and shall in no case be exempt from judgment and execution, except in the hands of an innocent purchaser for value and without notice, should not be extended beyond its terms, and, therefore, does not entitle a levy on personal property under a writ of attachment for the unpaid purchase price thereof to priority over a previous levy on such property under another writ of attachment.

*Appeal from the St. Louis City Circuit Court.*—HON. DANIEL D. FISHER, Judge.

REVERSED AND REMANDED.

*F. A. Wislizenus*, for appellant.

*Mills & Flitcraft*, for respondent.

THOMPSON, J.—The plaintiff sued out an attachment against Isaac L. Rothan and Isaac Rothan, Jr., composing the mercantile firm of Rothan & Co., on various grounds, which need not be stated, and caused the same to be levied on the stock and fixtures of the defendants on the thirtieth of August, 1888. Soon thereafter several other creditors of Rothan & Co. sued out attachments against them, and pointed out to the sheriff specific property on which this plaintiff's attachment had already been levied, and directed the sheriff to make special levies on such property, as being property which these attaching creditors had sold to Rothan & Co., and which had not been paid for by the latter. The property was subsequently sold by the sheriff, and the plaintiff, having prosecuted his demand to judgment, made a motion for a rule on the sheriff requiring him to pay over the proceeds of the sale to the plaintiff as a prior attaching creditor. This motion was resisted by the subsequent attaching creditors, by whose direction the sheriff had made the special levies for unpaid purchase money, and, on the hearing of it, they offered to show, in substance, that the goods on which the special levies had been made by their direction, were part of a larger lot of goods which had been sold by them to Rothan & Co., and that the purchase price therefor had not been paid. The court admitted this evidence, and the plaintiff excepted. Thereupon the court overruled the plaintiff's motion, deciding that the special levies for unpaid purchase money, though subsequent in date to the plaintiff's levy, were superior to it in right: From this ruling the plaintiff prosecutes this appeal. The case was argued at the last term of court, and, after much consideration, we filed an opinion reversing the judgment, and remanding the cause, holding that, in order to bring a creditor within the terms of the statute whose protection the interpleaders invoke in this case (Revised Statutes, 1879, sec.

2353 ), two things must concur: *"First.* He must have a *judgment* and *execution. Second.* His judgment must have been for unpaid purchase money, which we understand to mean that it must have been *entirely* for unpaid purchase money." On the second ground we proceeded upon the view taken by the supreme court of New York in *Hickox v. Fay,* 36 Barb. ( N. Y.) 9, and by the supreme judicial court of Maine in *Holmes v. Farris,* 63 Me. 318, and we quoted, as the ground of our decision, the following language from the opinion in the Maine case: "The principle to be deduced from the cases is, that when a creditor has two classes of claims against his debtor, by uniting them in one suit and obtaining judgment, he reduces that in which his rights are superior to a level with that in which they are inferior." After our decision was rendered, a motion for rehearing was filed on behalf of the interpleaders, and an able written argument was presented in support of it. An examination of this argument and a recur-. rence to the record convinces us that we were wrong in the application of the second principle, on which we had proceeded, to the facts of the particular case. We found, on looking more closely at the record, that each of the interpleaders was proceeding to recover the price "of *a certain bill* of goods," sold by such interpleader to Rothan & Co., and that the special levy made by each interpleader was a levy upon such goods of the bill of goods thus sold to Rothan & Co., as could be found in their store in St. Louis, not resold by them. We concluded that, upon these facts, the principle above stated, in regard to mingling together a demand which was privileged, so to speak, with one which was not privileged, could have no application, but that, where the creditor was suing to recover the price of a single bill of goods sold and delivered to the defendant, he would not be divested of the privilege given him by the statute, if otherwise entitled to it, in respect of such

goods as he might find in the hands of the debtor unsold, from the mere fact that the debtor had succeeded in selling and placing beyond his reach a portion of them. Satisfied that we were wrong upon this ground, and being in much doubt upon the other ground, we concluded to grant a rehearing and give the cause such a reconsideration as we could before finally deciding it.

We have now gone over the matter again. All the members of the court still feel much doubt upon the question, and, in view of the great importance to a commercial community of having the question definitely and speedily settled by the only tribunal which can finally settle it, whether this statute is a statute of priorities among creditors or a mere statute of exemption in the case where a creditor has obtained a judgment and execution, we have concluded that we exercise our powers most wisely by adhering to our former decision, stating again the grounds thereof, and by certifying the case to the supreme court for final determination, in pursuance of the constitutional mandate.

The ruling of the circuit court appears to have been based upon the view which the court took of the proper interpretation of section 2353 of the Revised Statutes of 1879. This statute reads as follows: "Personal property shall, in all cases, be subject to execution on a judgment against the purchaser for the purchase price thereof, and shall in no case be exempt from such judgment and execution, except in the hands of an innocent purchaser, for value, without notice of the existence of such prior claim for the purchase money." The learned judge took a view which appears to have been influenced by the following *dictum* of Mr. Justice NORTON in *Parker v. Rodes*, 79 Mo. 91: "Under this statute the vendor of personal property, *who had obtained a judgment against the vendee*, might seize the property on execution in the hands of a purchaser thereof with

notice that the purchase price had not been paid, and it would probably authorize the vendor, under circumstances justifying a suit of attachment against the vendee, to seize such property in the hands of a third person purchasing with notice that the property had not been paid for." In *State to use v. Mason*, 96 Mo. 132, this *dictum* is repeated. But, beyond this, we discover nothing in the opinion which furnishes us with a guide to the decision of the present case.

The decision of the Kansas City Court of Appeals in *Bolckow Mill Co. v. Turner*, 23 Mo. App. 103, was professedly rendered in deference to the foregoing *dictum* of the supreme court. In that case there were several attaching creditors, the junior one of whom, a manufacturing corporation, claimed the property over the others, on the ground that its demand was for the unpaid purchase money of the specific goods levied upon. But this junior attaching creditor had prosecuted its demand *to judgment*, and the question was whether it could have execution, by reason of its supposed priority as an unpaid vendor, over the prior attachment, and the court held that it could. The difficulty that the property was already *in custodia legis* in the actions of the prior attaching creditors, when it was first seized under the attachment of the unpaid vendor, was one which the court thought must yield, in order to give scope to the enforcement of the right which the court understood to be given by the statute. The court said : "We hold that personal property held under an attachment can be seized under an execution on a judgment against the purchaser for the purchase price of the property, unless, indeed, the attaching creditor can be held to be an innocent purchaser for value. The statute makes only one exception, that of an innocent purchaser for value, without notice of the existence of the claim for the purchase money. Creditors are not named in the exception. We cannot enlarge

this exception.    Creditors are not innocent purchasers."
The court also conceded that it could not be said that
the statute confers upon the vendor of personal property
a *lien* for the purchase price thereof ; but it observed
that the right conferred by the statute may, in some
cases, partake of the character of a vendor's lien.

If the present case stood before us as the above case
stood before the Kansas City Court of Appeals, we should
decide it in the same way.   We have given anxious care
to the subject of this statute, in this case and also in the
case of *Boyd v. Ward Furniture, etc., Co.*, 38 Mo. App.
210, just decided, and have come to the conclusion that
whatever our views may be of its policy or of the
mischiefs which it is likely to create, it is our duty
to administer it according to its terms, and not to
attempt to fritter it away by interpretation, or to graft
exceptions upon it.

But we are unwilling to go beyond its terms.   It
cannot escape attention that it reverses what had hith-
erto been the policy of the law in this state.   That policy
has been steadily opposed to rights in the nature of
secret liens upon personal property, and to secret titles
in unpaid vendors where the property has passed into
the possession of the vendee.   This is clearly shown by
the second clause of section 2505, Revised Statutes of
1879, and by section 2507 of the same statute.   The first
of these statutes invalidates conditional sales where the
goods are delivered to the vendee, except where the
condition is evidenced by writing executed, acknowl-
edged and recorded, as in the case of chattel mortgages.
The second, enacted in 1877, was manifestly intended to
invalidate numerous devices which had sprung up for
the evasion of the latter, such as the pretense of leasing,
renting or hiring the property, where the real transac-
tion was a sale on the plan of the vendee receiving pos-
session and paying the purchase price in instalments.
As was said by the supreme court in *Coover v. Johnson*,

86 Mo. 533, this last statute was intended to prevent secret and unrecorded contracts of sale from being used to the detriment of unsuspecting creditors or purchasers from the vendee. Under the former of these statutes ( section 2505 ) it is manifest that an unpaid vendor cannot reserve a right of priority over other creditors by any species of contract with his vendee, unless the same is acknowledged and recorded, as in the case of chattel mortgages. Under the second ( section 2507 ), he cannot reserve *title* in himself by any device of leasing, renting or hiring, where possession is actually delivered to the assumed lessee, tenant or bailee, unless the contract is in like manner acknowledged and recorded, as in the case of chattel mortgages. But, by the terms of section 2353, the same result is reached, so far as striking down the rights of other creditors is concerned. The unpaid vendor cannot, indeed, reclaim the property in specie, but, under the construction contended for by the respondent, his junior attachment of it is superior to the senior attachment of other creditors ; and, although it may be *in custodia legis* under their attachments, the execution under his judgment, when recovered, will vacate their liens and wrest the property from the custody in which their attachments have placed it.

Aside from this, the policy of our statute law has always been to make the actual possession of goods and chattels *prima facie* evidence of ownership ; and to this end it has invalidated sales of goods and chattels, unaccompanied by the delivery of actual possession within a reasonable time, regard being had to the situation of the property. R. S. 1879, sec. 2505. The courts of this state have always given the fullest effect to this statute as a rule of public policy, and ( except in the one case of *Worley v. Watson*, 22 Mo. App. 546 ), without reference to the question whether the person challenging the sale was a prior or subsequent creditor or purchaser. *Knoop v. Distilling Co.*, 26 Mo. App. 303, and cases cited.

This policy, so important in upholding that system of credits without which our modern commerce could not subsist, is undoubtedly greatly infringed by section 2353, Revised Statutes. It is probable that. nearly all the seasonable goods in the mercantile stocks in this state are purchased on longer or shorter credits, and that every wholesale and retail store is, to a large extent, filled with goods the purchase price of which has not been paid.. The possessors of the goods, by means of their possession, trade actively and acquire credits. A banker, seeing a merchant in the possession of a large stock of seasonable goods, doing an active and apparently lucrative trade, extends credit to him by discounting his paper. Suddenly grounds of attachment are discovered, and the banker attaches the goods to save his debt. He finds that he has got nothing. The goods, although in the possession of the owner as a stock in trade,—the stake held out by him to the world on which he secured credit,—are all held by distant creditors by means of secret strings which they are at liberty to pull at any time.

Our conclusion is that, while we cannot yield to the argument *ab inconvenienti*, and set aside the distinct terms of the statute, we ought, nevertheless, to refuse to extend a statute, so fraught with mischief to commerce, beyond its strict terms. In thus holding that the statute applies to the case of a judgment and execution, according to its language, and is not to be extended by a remedial construction to the case of an attachment, so as to interfere with the priority of an earlier attaching creditor, we do not introduce any novel conception in the interpretation of the statute law relating to attachments and executions. Several distinctions in respect of rights where the proceeding is by attachment, and where it is by execution, have been discovered in our statute law, and recognized by our courts. Thus in *State to use v. Knott*, 19 Mo. App. 151, this court held

that the fact that the defendant in an execution is about to remove from the state will not justify the levy of an execution upon his property, exempt by the terms of the statute relating to executions, although the statute relating to attachments (Revised Statutes, 1879, sec. 416) provides in terms that no property or wages declared by statute to be exempt from execution shall be attached, *except* in the case of a non-resident defendant or of a defendant who is about to move out of the state with intent to change his domicile. It was argued that the statutes were to be construed *in pari materia*, and that the qualification that the exemption privilege annexed to the statute relating to attachments should be extended to the statute relating to executions. But this court held that the claim was untenable, using the following language : " Whatever may have actuated the legislature to discriminate between property subject to seizure on *mesne* and final process, it has unquestionably made such discrimination, not only in this instance, but in numerous others ; and it is not for the courts to substitute their discretion for that of the legislature." Again, under section 2525, Revised Statutes, 1879, third persons may interplead as to property *attached* in the hands of a garnishee, while, in the case of property thus taken in execution, there is no such right. *Wymer v. Pritchartt*, 16 Mo. 252. We allude to these decisions to show that the statute law has created distinctions between cases where the proceeding is by attachment and where it is by execution, which the courts have not felt at liberty to disregard, as we are asked to do in this instance, by building up a liberal construction of the statute under consideration, creating for it an "equity," so to speak, so as to extend its benefits to a party whose case is not within its terms. We are, therefore, of opinion, for the foregoing reasons, that such a construction ought not to be extended to this statute, and the judgment, with the concurrence of all the judges, will be reversed, and the cause remanded

As, however, it is desirable that the question litigated should be finally put at rest by the only tribunal that can thus put it at rest, and as one of the judges of the court is of opinion that the decision herein rendered is opposed to the decision of the supreme court in *State to use v. Mason,* 96 Mo. 132, it is ordered that the cause be certified to the supreme court for final determination.